In re GRANVILLE & WINTHROP BLDG.
CORPORATION.

LLOYD et al. v. STERN et al.
No. 5945.

Circuit Court of Appeals, Seventh Circuit.
Nov. 20, 1936.

Rehearing Denied Jan. 29, 1937.

Byron F. Babbitt, of St. Louis, Mo., for appellants.

Jacob Chasnoff and Hugo Monnig, Jr., both of St. Louis, Mo., and James J. Kelly and J. Robert Cohler, both of Chicago, Ill. (Taylor Chasnoff & Willson, of St. Louis, Mo., and Kelly & Cohler, of Chicago, Ill., of counsel), for appellees Holman, Block, and Browne.

Samuel Berke, of Chicago, Ill., for appellee Stern.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This is an appeal from an order of the District Court confirming a plan of reorganization of the debtor under section 77B of the Bankruptcy Act (as amended, 11 U. S.C.A. § 207). Appellants are the owners and holders of first mortgage bonds of the debtor corporation in the amount of $38,-400, of which the amount of $29,000 has been deposited with the bondholders' protective committee. The entire bonded indebtedness was originally in the amount of $575,000, and was secured by a first mortgage trust deed on the real estate here involved. Of this issue, bonds of the face value of $35,000 were subsequently paid and canceled, and at the time these proceedings were instituted the entire bonded indebtedness amounted to $540,000.

Default was made in payment of the interest on April 1, 1932. The present bondholders' protective committee was organized, and has continued to act under a deposit agreement of November 30, 1931.

On May 4, 1932, the Chicago Title & Trust Company, as trustee under the trust deed, filed a bill to foreclose the mortgage trust deed in the state court, and on June 14, 1934, a decree of foreclosure was entered in which appellee Stern was appointed receiver and acted as such until July 11, 1935.

On June 1, 1935, the debtor filed its voluntary petition for reorganization under

section 77B. The petition was approved by the court, and appellee Stern was appointed trustee. The bondholders' committee, by leave of court, intervened on June 15, 1935. On September 20, 1935, the bondholders' committee and the debtor jointly presented a plan for reorganization, and the matter was referred to the Referee in Bankruptcy as Special Master to receive all proofs of claims and of interests of creditors and acceptances of the plan proposed. Acceptances of this plan were filed by holders of the bonds in the sum of $487,800, and by all the stockholders. The master reported his approval of this plan and there were no objections filed by any creditor. The court, however, disapproved the plan because (1) it left the ownership and management of the property in the hands of the same persons who had organized the corporation and had sold the bonds; (2) the proposal to give income bonds to the bondholders was misleading, and the likelihood of their receiving anything on those bonds in the course of years was remote.

After an appraisal of the property and a hearing upon its value, the court found the debtor insolvent, and that it had no equity of any value in the property, as its entire estate did not have a potential future valuation sufficient to pay the claims of the mortgage bondholders. It further found that a plan of reorganization providing for the transfer and conveyance of all the debtor's assets to a trustee, to be designated by the court, for the exclusive benefit of all first mortgage bondholders, free of all liens and encumbrances, would be tantamount to a sale by the court free of all liens except taxes; that the debtor was not entitled to participate in any plan of reorganization, and the acceptance by any of its stockholders was not necessary or requisite to the consummation of such plan. Time was extended for the bondholders' committee to file a plan consistent with the findings. Such a plan was filed, but for lack of acceptances by two-thirds

of the bondholders, it was withdrawn by leave of the court. All parties to the proceedings were enjoined from directly or indirectly soliciting or sending communications to any creditors relating to any matter involved, but the bondholders' committee was permitted to answer individual inquiries.

Subsequently, a third plan was filed which differed from the second only in minor details. The debtor asked leave of court to communicate with its bondholders with reference to the third plan and was refused. Acceptances were filed by individual holders of bonds and certificates of deposits of bonds in the aggregate sum of $295,000, while certificate holders representing $198,000 of bonds filed dissents to the plan with the bondholders' committee, whereupon the court approved the third plan.

The errors relied upon relate to the court's approval of the third plan; the issuance of the restraining order and the court's refusal to permit the debtor to communicate with its bondholders with relation to the third plan; and the court's refusal to approve the first plan.

It is contended by appellants that the court erred in approving the third plan because it had not been accepted by two-thirds in amount of the bondholders. We think this contention must prevail. It is admitted that two-thirds in amount of the bondholders did not accept the plan as provided in section 77B (e) (1), as amended by Act Aug. 29, 1935, 11 U.S.C.A. § 207 (e) (1), but appellees in support of the order rely upon a proviso (e) (1) (c) in that section which states that such acceptance shall not be requisite to the confirmation of the plan if provision is therein made for the protection of the interests, claims, or liens of such non-accepting creditor, or class of creditors in the manner provided in subdivision (b), clause (5) of section 77B (11 U.S.C.A. § 207 (b) (5)) [1]

1 "(b) A plan of reorganization within the meaning of this section * * * (5) shall provide in respect of each class of creditors [if affected] of which less than two thirds in amount shall accept such plan * * *. adequate protection for the realization by them of the value of their interests, claims, or liens * * * [if affected] (a) by the transfer or sale of such property subject to such interests * * * or by the retention of such property by the debtor subject to such interests * * * or (b) by a sale free of such interests * * *, at not less than a fair upset price and the transfer of such interests * * * to the proceeds of such sale; or (c) by appraisal and payment either in cash of the value * * * of such interests * * * or, at the objecting creditors' election, of the securities allotted to such interests * * * under the plan, if

The only provision of that clause which is here applicable is the last one under which the court impliedly, if not explicitly, found that the plan approved was consistent with the circumstances presented, and equitably and fairly provided adequate protection to appellants for the realization by them of the value of their interests. It is urged by appellees, inasmuch as the holding of the property under the plan was for the exclusive benefit of all the bondholders, exclusive of taxes and expenses, that adequate protection for appellants' claims was thereby provided, and that the court's finding in that respect must be upheld.

■ A reading of this provision separate and apart from the other portions of the section, would seem to indicate that Congress had invested the District Court with power to approve any non-accepted plan if under the circumstances presented, it was of the opinion that the plan equitably and fairly provided adequate protection for the claims of interested creditors. This provision, however, must be construed together with all the other provisions of the section and the act, and when so done it is obvious that Congress had no such intention. Otherwise, there would have been no need for the enactment relating to acceptances and the other provisions relating to adequate protection of the non-accepting creditors.

■ The remaining question is whether the approved plan provided adequate protection for appellants' interests. We think this must be answered in the negative. The plan provided for a liquidating trust of fifteen years duration with an additional five years to be added if thought advisable by the trust managers. Certificates of interest were to be issued which were to represent no interest in the property but only an interest in the net income and proceeds. The title to the property was to be vested in a trustee subject to the direction of three trust managers appointed by the court.

The Second Circuit Court of Appeals interpreted this section of the statute agreeable to our view in Re Murel Holding Corporation, 75 F.(2d) 941, 942. The facts there presented were quite similar to those in this case, and the court said, "Normally it was expected that consents should be obtained. If they were not, the plan must 'provide adequate protection for the realization by them,' the dissenting class, 'of the full value of their interest, claims, or liens.' This may be done in four ways: * * * (d) The last is not, properly speaking, a 'method' at all; it merely gives power generally to the judge 'equitably and fairly' to 'provide such protection,' that is, 'adequate protection,' when the other methods are not chosen. * * * In construing so vague a grant, we are to remember not only the underlying purposes of the section, but the constitutional limitations to which it must conform. It is plain that 'adequate protection' must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property."

Under the facts presented by this record, we are convinced that the plan approved did not provide adequate protection for the realization by appellants of the full value of their interests.

■ With respect to the court's refusal to approve the first plan, we think there was no error. We think the act should not be so construed as to compel the court to approve every plan which has been accepted by the required number of creditors. The court in this case referred to cogent and commendable reasons why the first plan was objectionable, and we are not at liberty to disturb that conclusion. In view of our ruling, it is not necessary to discuss the other alleged errors.

The decree is reversed and the cause remanded with instructions to disapprove the third plan, that each, the appellants and the appellees, pay their respective costs occasioned by them in this appeal, and that another opportunity be granted the debtor and creditors to present a plan acceptable to the creditors in the number and amount as required by statute.

any shall be so allotted; or (d) by such method as will in the opinion of the judge, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection."