In the Matter of William ZECKENDORF, a/k/a William Zeckendorf, Sr., Debtor.

No. 68 B 750.

United States District Court, S. D. New York.

April 22, 1971.

Wolf, Popper, Ross, Wolf & Jones, New York City, for petitioner; Howard L. Jacobs, New York City, of counsel.

Charles Seligson, New York City, for William Zeckendorf, debtor.

## OPINION

FRANKEL, District Judge.

On August 29, 1968, William Zeckendorf filed for an arrangement in this court under Chapter XI of the Bankruptcy Act. On the same day, without adversary presentations, Referee Herzog issued a restraining order under § 314 of the Act, 11 U.S.C. § 714, barring actions against the debtor pending a final decree in the arrangement proceeding or further order of the bankruptcy court.

Some four months earlier, on May 1, 1968, the plaintiffs herein, undertaking to sue for themselves as sinking fund debenture holders and for others similarly situated, had brought an action in this court against Webb & Knapp, Inc., Zeckendorf as its chief officer, other officers and directors, the Marine Midland Grace Trust Company as trustee under the indenture covering issuance of the sinking fund debentures, and still other defendants whose identities and alleged roles are not important for present purposes. The complaint charged violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of SEC Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. It was alleged, *inter alia*, that Webb & Knapp, through defendant officers and directors, led by Zeckendorf, had filed false and fraudulent statements of property values with Marine Midland, thus purporting to meet conditions of the trust indenture that Webb & Knapp could not in fact satisfy; that the debenture holders were defrauded as a result; and that Marine Midland had been "grossly negligent and reckless in failing to ascertain the pertinent facts" and take appropriate action. Zeckendorf moved in June 1968 to dismiss that complaint; the other defendants joined with him. Long adjournments followed, to and beyond the filing of Zeckendorf's Chapter XI proceeding in August, 1968. The motion came on for argument finally in January, 1969, was heard by Judge Herlands, but remained undecided at the time of his death in August. Thereafter, the motions to dismiss were withdrawn by stipulation and plaintiffs moved for leave to file an amended complaint. In the meantime, counsel for the debtor had been at work and continued to work in his defense, though not at a breakneck pace. Thus, after the Chapter XI filing and stay, Zeckendorf served a reply memorandum on the motion to dismiss (January 1969); served interrogatories upon plaintiffs (May 27, 1970); and noticed a deposition of plaintiffs (again on May 27, 1970).* Plaintiffs during that time answered Zeckendorf's interrogatories, handled the other steps outlined above, and then, on July 23, 1970, served notices to depose Zeckendorf and Marine Midland.

Those notices triggered the present controversy. For two years the suit in this court alleging securities frauds had moved forward (sedately, to be sure) without reference to the bankruptcy stay by the debtor (its presumed beneficiary) or by the plaintiffs. With

---

\* Counsel for Zeckendorf also represent three other defendants. They suggest this as explaining their failure to invoke the stay until now. It is not easy to assess the weight of this or to know what side of the balance it lowers. If Zeckendorf is now being hurt by continuation of plaintiffs' suit in any respect that the bankruptcy court ought to care about (and in some respect that changes the situation from what it has been over the last two years or so), the nature of the problem is nowhere suggested in the submissions of his several counsel.

the noticing of his deposition, however, counsel representing Zeckendorf and three others wrote plaintiffs on August 7, 1970, recalled the restraining order, and suggested that plaintiffs might seek a modification of that order in the bankruptcy proceeding.

When plaintiffs followed the suggestion, counsel for Zeckendorf proceeded to oppose resolutely and, thus far, successfully. Referee Herzog, whose learning in this field makes it more than *politesse* to say one hesitates to question him, denied the modification. Evidently viewing the burden as being altogether upon plaintiffs, he considered and rejected in turn the three arguments he found in their submissions:

(1) As to the period of two years in which both sides had gone ahead despite the stay, he concluded "that an order of this Court cannot be vitiated either by the consent of these parties or by their conduct in disregarding its provisions."

(2) As to the long pendency of the arrangement proceeding with no sign of imminent success, the learned Referee said "the fact that this Court has not entered an adjudication in the Chapter XI proceeding is the clearest indication that it does not consider the arrangement proceeding hopeless. Secondly, if the point is reached where the Court finds that there is no prospect of rehabilitation and that ordinary bankruptcy is the appropriate vehicle, the debtor will be adjudged a bankrupt and he will be entitled to a stay of suits against him until the question of his discharge is determined."

(3) Finally, considering plaintiffs' contention that their claim is based upon fraud and is therefore not dischargeable, Referee Herzog found this to be at best "debatable," making it appropriate that the debtor have a stay until he

has had "a reasonable opportunity to procure a discharge."

Having thus rejected each of the arguments for modification, Referee Herzog denied the application "without prejudice to renewal at an appropriate time."

■ Without questioning the three points just summarized, I am constrained to differ with and revise the Referee's final result. Both sides agree that the occasion for such action must be a finding of "abuse of discretion." The phrase grates upon the ear, not least because it is not overwhelmingly apt to describe what actually goes on. It means in the present context only that a stay should not be rigidly enforced when no sound reason is shown to require it and where there is good reason for its modification. Foust v. Munson S. S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936); In re Laufer, 230 F. 2d 866 (2d Cir. 1956); In re Adolf Gobel, Inc., 89 F.2d 171 (2d Cir. 1937); In re Murel Holding Corporation, 75 F. 2d 941 (2d Cir. 1935); see Application of Reich, 146 F.2d 162 (2d Cir. 1944). In this particular case, the Referee is held to have misconceived the legal parameters of the problem and to have been led as a result to insist upon a positive restraint for which there is no positive reason, whereas a much more limited protection is the most the debtor fairly needs or is entitled to have.

■ Referee Herzog may have been misled at the threshold when he placed the burden of demonstration and persuasion upon the movants. The restraining order was never contested until now. No particular and affirmative showing of need was ever made for it. None has been made now. But the restraint is not a matter of right. Foust v. Munson S. S. Lines, *supra;* 8 Collier on Bankruptcy 254 (14th ed.). The problem should preferably have been approached at the outset by treating the stance of the debtor as "not substantially unlike that of [a suitor] for injunction * * *." *Foust, supra,* 299 U.S. at 86, 57 S.Ct. at 95.

The only legitimate concern on this debtor's side is that he not be cast in judgment in plaintiffs' suit until the dischargeability of the alleged liability has been determined. But this does not require the total stay upon which he insists. Zeckendorf is evidently a central participant in the events about which plaintiffs complain. It is a striking fact that the announced purpose to elicit his knowledge was what awoke in counsel for him and others the long dormant memory of the stay. He could presumably be deposed as a witness if not as a party. But there is no valid interest of his to favor that course, and there are interests of plaintiffs, and perhaps of the court, that might well be injured by it.

There is, in a word, no justification for staying against Zeckendorf the processing of plaintiffs' suit toward, if not to, the point of judgment. And his apparently central role in the litigated events makes it likely that awkward and obstructive results will follow his insulation from the action.

The problem of dischargeability, the only genuine one that has been made to appear, is readily measured and managed. The solution, already indicated, is simply to bar the taking of any judgment by plaintiffs against this debtor until the issue of dischargeability has been resolved or the barrier is for some other reason removed. The administration of this limited restraint is especially simple in the present circumstances, with both the arrangement proceeding and plaintiffs' suit lodged in a single courthouse. More generally, problems of this nature may be more flexibly handled in the future, no matter where suits are brought or attempted, as a result of the recent amendment of the Bankruptcy Act giving the bankruptcy court, and the referee, jurisdiction to "determine the dischargeability of debts, and render judgments thereon." Sections 2(a) (12), 17(c), 38(4); 11 U.S. C.A. §§ 11(a) (12), 35(c), 66(4) (Supp. 1971). But these are nonessential matters of detail. The bankruptcy court, moved generally by equitable considerations and dealing here with a specifically equitable device, is surely able to tailor its stay to the narrow purpose that warrants it.

The petition is granted. The order of the Referee is vacated and the matter is remanded to him with directions to modify the restraining order in accordance with this opinion.

It is so ordered.

