**In re Robert W. SMITH, d/b/a R & J Automotive, Debtor.**

**SOUTHERN MISSOURI SAVINGS & LOAN ASSOCIATION, Movant,**

v.

**Robert W. SMITH, Respondent.**

**Bankruptcy No. 83–00163(SE).**
**Motion No. 1.**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Sept. 6, 1984.

Daniel T. Moore, Poplar Bluff, Mo., for movant.

William B. Gresham, III, Poplar Bluff, Mo., for debtor.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

At issue before this Court is the Movant's Motion For Relief From Automatic Stay Or For Adequate Protection. Movant seeks relief from the automatic stays under 11 U.S.C. 362(a) so that it may foreclose its deeds of trust on certain real estate belonging to the Debtor and his non-filing spouse.

The relevant facts underlying this motion are the following:

1. On June 29, 1977, the Debtor borrowed $17,300 from the Movant. To secure this loan, Debtor executed and delivered a first deed of trust on two parcels of real estate to Movant.

2. On March 28, 1978, Debtor borrowed an additional $10,500 from Movant and as security for this loan gave Movant a first deed of trust on another parcel of real estate.

3. Debtor subsequently went into default on these loans and on May 13, 1983, filed a petition seeking relief under Chapter 11 of the Bankruptcy Code.

4. At the hearing on the instant motion, C.M. Wilson, a loan officer, testified that the balance owed on the first loan discussed (Loan No. 1) herein was $16,031.48 and the balance owed on the second loan (Loan No. 2) was $9,173.89. Mr. Wilson also expressed his opinion on the fair market value of the properties serving as collateral for these loans. In his estimation, the houses and lots securing Loan No. 1 are worth $19,000 and the house and lot securing Loan No. 2 is worth $6,500.

5. Robert W. Smith, the Debtor, testified in support of his case in opposition to the instant motion. According to the Debtor, the properties securing Movant's loans are worth a total of $53,000. However, these properties are also pledged as collateral for a loan from the U.S. Small Business Administration having an unpaid balance of $160,000 and are subject to a $26,000 federal tax lien.

The Debtor further testified that he uses the properties, as his residence and for his business of rebuilding and refurbishing "junked" automobiles. The automobiles and various automobile parts are stored on the property and the actual rebuilding of the automobiles also occurs there. As a result of a flood in 1982, this business and the property suffered substantial damage. Some 26 automobiles purchased by Debtor

for rebuilding were destroyed by the flood. Since the flood, the net earnings of the business have been consumed in payment for 20 of these 26 destroyed automobiles.

Also, Debtor rents two (2) of the four (4) houses for a total monthly rental of $270. These funds are used by the Debtor and his wife for living expenses.

## FINDINGS AND CONCLUSIONS

### Equity

Regardless of whether one accepts Movant's or Debtor's valuation of the properties as being accurate, the fact remains that, using either valuation, Debtor and his wife have no equity in the subject properties. The loan from the SBA totaling $160,000 and the amount of the federal tax lien when added to the amounts owed Movant far exceeds either estimation of value.

### Necessity For An Effective Reorganization

Obviously, the Debtor needs the property in question for his business. Rehabilitating used automobiles requires sufficient space to store automobiles. It is doubtful that the Debtor would rent equivalent space for a price cheaper than his scheduled payments on this property.

Further, the evidence showed that Debtor's business since the flood in 1982 has generated sufficient net cash flow to pay most of his losses incurred from the flood. Thus, there is a reasonable likelihood that Debtor may successfully reorganize, and Movant is not entitled to relief from the automatic stays under 11 U.S.C. 362(d)(2).

### Adequate Protection

The crux then of this proceeding is whether Debtor is affording the Movant adequate protection under 11 U.S.C. 362(d)(1), and as defined in 11 U.S.C. 361.

As this Court has noted in previous opinions on this subject, the precise nature of Congress' conception of "adequate protection" as defined in section 361 and as used throughout the Bankruptcy Code is unclear.

Section 361 of the Code provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity inproperty, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Subparagraphs (1) and (2) of this section view "adequate protection" as compensation for any decrease in value of the collateral resulting from the automatic stays under section 362 of the Code.

Subparagraph (3), however, defines "adequate protection" as relief which will "result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." The key phrase in this alternative example is "indubitable equivalent" which has as its origin the following language in Justice Learned Hand's opinion in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir.1935), at page 942:

... (d) The last is not, properly speaking, a "method" at all; it merely gives power generally to the judge "equitably and fairly" to "provide such protection," that is, "adequate protection," when the other methods are not chosen. It is this alone which the debtors here invoke. In construing so vague a grant, we are to remember not only the underlying purposes of the section, but the constitutional limitations to which it must conform.

It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

*See* Senate Report No. 95–989, 95th Cong.2d Sess. (1978) p. 126, U.S.Code Cong. & Admin.News 1978, p. 5787.

Justice Hand clearly viewed "adequate protection" as mandating at the very least, interest on the value of a creditor's security in the context of confirming a plan of reorganization.

Where adequate protection is sought prior to confirmation of a plan, Justice Hand, apparently, thought that less was required:

> No doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare; much depends upon how long he has had already, and upon how much more he demands. But a stay should never be the automatic result of the petition itself, and we cannot see that there was here anything else of substance.

*In re Murel Holding Corp., supra* at page 943.

As one can see, "adequate protection" as delineated in subparagraph (3) of Section 361 is different from "adequate protection" as delineated in subparagraphs (1) and (2) of that section. Reviewing the legislative history of this section does not alleviate the confusion.

Turning to the case at hand, the Court finds the following to be the facts relevant to a disposition of this matter:

(a) Movant's witness valued the subject property at $25,500. If this is accurate, then Movant's indebtedness of $25,200 is barely secured and there is little value in the security to cover an additional accruing interest, not to mention expenses of selling the property. Debtor valued the property at $53,000. If this is accurate, then Movant is well secured and seemingly has little basis for demanding adequate protection.

However, reviewing the record as a whole, the Court finds and concludes that the property is worth only $25,500. The Court cannot accept Debtor's valuation of the property as being worth $53,000. In his schedule B–1, Debtor valued his undivided interest as a tenant by the entirety in this same property at $3,000 from which the Court may infer that he valued the entire property as being worth $26,000.

(b) Debtor filed his Chapter 11 petition on May 13, 1983. As of this date, Debtor has filed a proposed plan of reorganization and a proposed disclosure statement. Objections to the proposed disclosure statement were filed and a hearing on its approval was held on July 31, 1984. Movant has not received any payment on its indebtedness since July 15, 1983.

In this Court's opinion, Congress did not intend a rigid approach to "adequate protection", particularly where relief from the automatic stay is sought while confirmation of a plan of reorganization is still pending. The examples given in section 361 were not intended to be all-encompassing nor exclusive of other approaches. In short, the Court concludes that "adequate protection", in instances such as the present one, requires a balancing of the harm between the moving creditor and the debtor and, where the balance tilts in favor of the creditor, an award of compensation to the latter to cover, at least, some of the loss in opportunity cost resulting from the stay.

Here, Movant has not received any compensation for a year. Meanwhile, during this period, Debtor had the free use of this property, a luxury he would not enjoy absent these proceedings. Equity dictates that Debtor should resume the payments scheduled for his loans and should pay an additional amount to retire the indebtedness.

It is beyond argument that Debtor should also maintain insurance on the improvements located on the properties.

CONCLUSIONS

For these reasons, this Court will deny Movant's Motion For Relief From Stay if and only if Debtor shall comply with the following:

(1) Within sixty (60) days of this order, resume payment of the scheduled payments of $373.00.

(2) Within six (6) months of the Court's order pay to Movant an additional sum of $2,000 on the accrued indebtedness.

(3) Make reasonable and diligent efforts to sell the portion of the subject property as was discussed at the hearing.

(4) Maintain adequate insurance coverage on the improvements to the subject property, naming Movant as a loss payee.

(5) Maintain the improvements on the property in good repair and permit Movant's representatives to inspect the property at reasonable times.

The Court will enter a separate order consistent with this opinion.