REAVLEY, Circuit Judge:
Sun Country Development, Inc., debtor, filed for relief under Chapter 11 of the Bankruptcy Code. B.M. Brite, the only secured creditor, objecting to the reorganization plan approved by the bankruptcy and district courts, appeals. We affirm.[1]
*408 Brite had sold Sun Country approximately 500 acres of land, retaining a first lien on the land. At Sun Country’s default, Sun Country owed Brite $148,377 and Brite held a first lien on 200 of the 500 acres sold to Sun Country (Brite had released its first lien on the other 300 acres as provided by the partial release terms set forth in the deed).
In its petition for Chapter 11 bankruptcy, Sun Country listed the debt owed to Brite, the sole secured creditor, at $153,520.87. Sun Country also listed two unsecured creditors totalling $3,805.00. The reorganization plan, to which Brite objects, proposes a cram down: Brite’s first lien on the 200 acres would be released in exchange for twenty-one specified notes secured by twenty-one separate lots, which Sun Country had originally purchased from Brite and sold to various individual purchasers.
Brite first argues that the bankruptcy court’s approval of the plan of reorganization was improper because Sun Country did not propose the plan in good faith. The Bankruptcy Code, 11 U.S.C. § 1129(a)(3) (1982), provides that a court can confirm a plan only if it has been proposed in good faith. Sun Country’s original plan proposed that unsecured creditors would be paid in full and would be unimpaired. In its final plan, which was approved by the bankruptcy court, Sun Country proposed to issue nonnegotiable 90-day notes to the unsecured creditors and asserted that the claims were therefore impaired. The impaired unsecured creditors, to whom Sun Country owes $3,805.00, then approved the plan, including the release of Brite’s first lien on 200 acres in exchange for twenty-one notes secured by twenty-one lots, pursuant to 11 U.S.C. § 1129(a)(10) (1982).[2] Brite argues that the final plan was not proposed in good faith because Sun Country changed the status of the unsecured creditors from unimpaired to impaired only so that they could approve the plan and effectuate the cram down.
The requirement of good faith must be viewed in light of the totality of circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code to give debtors a reasonable opportunity to make a fresh start. Public Finance Corp. v. Freeman, 712 F.2d 219, 221 (5th Cir.1983). Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied. See In re Hewitt, 16 B.R. 973, 981 (Bankr.D.Alaska 1982) (whether petition for reorganization was filed in good faith).
We cannot agree with Brite that the plan was not proposed in good faith so as to bar its confirmation under 11 U.S.C. § 1129(a)(3) (1982). First, Brite’s claim that the unsecured creditors’ status was changed to effectuate the cram down does not go to whether the purpose of Sun Country’s proposed plan is to reorganize or whether the plan has a reasonable hope of success. Congress made the cram down available to debtors; use of it to carry out a reorganization cannot be bad faith. Second, even if Brite’s argument went to the issue of good faith, the district court, after a hearing, found that the status of the unsecured creditors was changed because Sun Country’s cash flow was insufficient to pay off the debts at the initiation of the plan. Therefore, the change Brite assails was necessary. Although Brite points to evidence showing Sun Country had sufficient funds to pay the unsecured debts, the district court’s finding is supported by the *409 record and will not be upset on appeal. See Fed.R.Civ.P. 52(a).[3]
Brite next attacks the plan on the grounds that the twenty-one notes from twenty-one obligors secured by twenty-one lots is not the indubitable equivalent of his first lien on 200 acres as required by 11 U.S.C. § 1129(b)(2)(A)(iii) (1982). Congress adopted the indubitable equivalent requirement of section 1129(b)(2)(A) (iii) from In re Murel Holding Corp., 75 F.2d 941 (2d Cir. 1935). In re Hollanger, 15 B.R. 35, 45 (Bankr.W.D.La.1981). In Murel, 75 F.2d at 942, Judge Hand considered whether the substituted security was completely compensatory, and the likelihood that the secured creditor would be paid, in determining whether the plan of reorganization provided the secured creditor with the indubitable equivalent of his original security.
At a hearing before the bankruptcy court, Sun Country presented evidence that the present value of the notes was $153,-777.06, over $200 more than the debt. Sun Country also presented evidence that the value of the lots securing the notes was $287,500. At the same hearing, Brite presented evidence that the notes could be sold for only thirty to fifty percent of their face value because of the debtors’ poor payment histories on the notes. After adopting the evidence presented by Sun Country as part of the facts, the bankruptcy court held that the notes were the indubitable equivalent of the first lien on the 200 acres.
Brite first complains that the notes are inferior to the first lien he had on the 200 acres in that present value of the notes is worth only fifty percent of its lien and barely exceeds the amount of the debt. Brite then complains that the present value calculation is incorrect because it fails to take into account the possibility of the debtors on the notes defaulting, the debtors’ histories of failing to keep their payments current. Brite also argues that the value the bankruptcy court placed on the lots securing the notes was too high. Brite finally complains that in the event of default, he will be forced to bring twenty-one, rather than one, foreclosure actions at a much greater expense.
To the extent that Brite attacks the findings of the bankruptcy court, we reject his complaints, as the findings were supported by the evidence. We further believe that Brite’s other concerns do not render the twenty-one notes dubitable equivalent of the original first lien. As reflected by the district court record, since Brite has taken over collection of the notes, the debtors have generally kept their payments on notes current. Furthermore, if debtors do default on their notes, the value of the land securing the notes, as found by the bankruptcy court, appears sufficient to cover the additional expense of foreclosing on twenty-one separate properties.
AFFIRMED.

. Sun Country moved that this appeal be dismissed as moot because the plan of reorganization, which is the subject of this appeal, has been substantially consummated. To dismiss this appeal on the basis of mootness, we must find that the plan has been so substantially consummated that effective judicial relief is no longer available to Brite. See Ohio v. Madeline Marie Nursing Homes, 694 F.2d 449, 462-64 (6th Cir.1982). Because Brite's first lien on up to thirty-five acres, which was canceled by the plan, could be reinstated if Brite were to prevail *408 in this appeal, effective judicial relief is still available and the appeal is not moot.

. This provision of the Bankruptcy Code states:
The Court shall confirm a plan only if all of the following requirements are met:
(10) At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.
11 U.S.C. § 1129(a) (1982).

. Because we hold that the plan, including the listing of the unsecured creditors as impaired, was proposed in good faith, we do not decide whether the plan could have been approved by the unsecured creditors in their prior unimpaired status. We note, however, that Congress settled this question for future cases by amending the Bankruptcy Code to provide that a plan of reorganization had to be approved by at least one class of impaired creditors. See 11 U.S.C.A. § 1129(a)(10) (West Supp.1985).