**In re Louis Meyers WERMELSKIRCHEN and Dorothy S. Wermelskirchen, Debtors.**

**Bankruptcy No. 93–11998.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Feb. 14, 1994.

Jonathan P. Blakely, Cleveland, OH, for debtors.

Stephen D. Hobt, Cleveland, OH, for Charter One Bank.

John A. Valenti, Benos, Cummigns, Mann & Valenti, Cleveland, OH, for Salem Court Condo. Assoc.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this voluntary Chapter 11 case, Louis Meyers Wermelskirchen and Dorothy S. Wermelskirchen (the Debtors) presented their proposed plan of reorganization (the Plan) for confirmation. Upon an evidentiary hearing of the matter, a review of the evidence adduced, and the record, generally, the following findings and conclusions are made:

### I.

The Debtors sought relief in this Court by filing their petition for voluntary relief under Chapter 11 of the Bankruptcy Code (the Code) on April 23, 1993. Subsequently, on September 24, 1993, their Disclosure Statement and Proposed Plan of Reorganization were filed. On November 17, 1993, the Debtors' Amended Disclosure Statement was approved. As presented, the Debtors' Plan is comprised of ten (10) classifications of claimants. The first eight classifications address the treatment of secured claimants, while Classes Nine and Ten address the treatment of administrative (including priority claims), and nonpriority general unsecured claimants, respectively. Five of the eight secured classes pertain to secured obligations owed to Charter One Bank (the Bank).

Classes One, Two, Seven and Eight are impaired. Classes Three, Four, Five, Six,

Nine and Ten are unimpaired. Of the impaired classes, where solicitation of votes is required, Classes One and Two voted to reject the Plan, Class Seven failed to vote or object, and Class Eight voted to accept the Plan. Apparently, contemplating this result, the effect of the Debtors' Plan is to "cram down" dissenting impaired creditors pursuant to § 1129(b) of the Code. In addition to voting rejection of the Plan, Class One (the Bank) and Class Two (Salem Court Condo Association) filed timely objections to Plan confirmation.[1]

## II.

In order to determine whether the plan is confirmable, the Court must decide whether cram down may be achieved over a dissenting impaired creditor where the elements of § 1129(a) have not been fully satisfied, in addition to § 1129(a)(8), and where the proffered "indubitable equivalent" standard is challenged under § 1129(b) of the Code.

■ Where timely objections are filed to a proposed plan of reorganization, the burden of proof is upon the objecting party to demonstrate by a preponderance of the evidence that the required provisions of § 1129 have not been satisfied. In this matter, The Bank has objected to plan confirmation upon multiple grounds. Specifically, The Bank contends that (1) the Plan, as presented, unfairly discriminates between classes of creditors in that it provides for payment of all scheduled secured and unsecured debt in full pursuant to contract terms but provides only for The Bank's return of collateral respecting Class One in full satisfaction of Class One without a valuation of that collateral pursuant to § 1129(b)(2)(A) of the Code; (2) The Plan fails to provide the Bank with an "indubitable equivalent" pursuant to § 1129(b)(2)(B), regarding its treatment of Class One; (3) The Plan omits the treatment of a secured debt owed The Bank in violation of § 1129(b)(2)(B) upon which the Debtors are co-obligors with their son (Robert) dated June 15, 1989, with an outstanding balance of $49,203.25 plus accrued interest and charges.

Said debt was neither scheduled by the Debtors nor provided for under the Plan, while providing payment in full of all other nonpriority general unsecured debt; (4) Lastly, The Bank contends that the Plan fails to protect its claims under Classes One, Three, Four, Five and Six by providing for the revesting of all property in the Debtors upon plan confirmation while failing to provide for lien retention during the Plan's repayment period, in violation of § 1129(b)(2)(A).

## III.

Confirmation of a proposed plan of reorganization in a Chapter 11 case is reviewable pursuant to provisions of § 1129 of the Bankruptcy Code [11 U.S.C. 1129]. Under § 1129(a), the required elements are provided and must be satisfied conjunctively before the plan can be confirmed. An exception is provided where all requirements under § 1129(a) are satisfied except for those under § 1129(a)(8). Where such scenario occurs, a plan may yet be confirmed under the cram down provisions of § 1129(b), if those elements are successfully demonstrated.

■ Reviewing the Debtors' Plan under provisions of § 1129(a), the Plan is not confirmable. Each element under § 1129(a), subsections (a)(1) through (a)(13), must be satisfied unless the plan is otherwise confirmable under § 1129(b). Herein, it is undisputed that of the several secured obligations owed by the Debtors to The Bank, one such debt was neither scheduled nor treated under the Debtors' Plan. Section 1123 of the Code addresses the contents of a plan. Subsection (a) of § 1123 addresses those matters which "shall" be included in a plan, as compared to subsection (b) which addresses permissive plan contents. See 11 U.S.C. 1123(a) and (b). Under the mandatory contents of § 1123(a)(4) it provides:

> ... a plan shall—
>
> (4) provide for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particu-

---

1. Salem Court Condominium Association orally withdrew its objection at the initial hearing on plan confirmation.

lar claim or interest. 11 U.S.C. 1123(a)(4).

The Debtors' Plan violates § 1123(a)(4), as the secured debt on which the Debtors are co-obligors with their son, Robert, was neither scheduled nor accorded plan treatment. Upon objection by The Bank, the existence of this $49,203.25 secured debt is undisputed. The omission of this secured debt from Plan treatment also violates § 1123(a)(5)(E) which requires adequate means for the Plan's implementation, including the satisfaction or modification of any lien. Further, the omission constitutes a violation of § 1129(a)(5)(F) which requires addressment of the cancellation or modification of any indenture or similar instrument. The omitted $49,203.25 debt is a note executed in June of 1989 on which the Debtors are co-obligors. Since the confirmation requirements of § 1129(a)(1) provides that the Court shall confirm a plan only if the plan complies with the applicable provisions of this title [11 U.S.C. 101, *et seq.*], the failure of the plan to adhere to the mandatory requirements of § 1123(a)(4) and (5) of the Code renders the plan nonconfirmable. Accordingly, confirmation of the Debtors' Plan is denied.

Additionally, the Debtors' Plan fails to meet the confirmation standard of § 1129(a)(2) which requires that:

(a)(2) The *proponent* of the plan complies with the applicable provisions of this title. See, 11 U.S.C. 1129(a)(2) (Emphasis added.).

Again, the title referred to is 11 U.S.C. 101, *et seq.* Under § 521 of the Code, the duties of a debtor in bankruptcy are addressed. Pursuant to § 521, the debtor must file a schedule of assets and liabilities, *inter alia,* listing all creditors. In this regard, the Debtors violated § 521(1) by failing to schedule the $49,203.25 debt. As § 521 is a provision of Title 11, the Debtors' omission prevents confirmation under § 1129(a)(2), as they are the proponents of the Plan.

■ On yet another basis, the Debtors' Plan is not confirmable. Assuming, *arguendo,* that the Debtors satisfied all of the § 1129(a) confirmation standards, except those of subsection (a)(8) and attempted plan

cram down under 1129(b), the Plan fails in this attempt. In the Debtors' effort to cram down the Plan respecting The Bank's debt under Class One, the Debtors propose to surrender certain real estate to The Bank in full satisfaction of this claim. The security under Class One is a mortgage held by The Bank on four (4) commercial condominium offices located in an office complex at 5350 Oberlin Avenue in Lorain, Ohio. These are the collateralized units which the Debtors propose to surrender to The Bank in full payment on their obligation. Section 1129(b)(1) provides, in pertinent part:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan ... if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan. 11 U.S.C. 1129(b)(1).

Section 1129(b)(2)(A) provides the standards to be met in determining whether "fair and equitable" treatment has been provided to a cram downed impaired secured claimant who rejected the plan. In relevant part, it provides:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; *and*

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

—or

(iii) for the realization of such holders of the indubitable equivalent of such claims.

The Plan fails to satisfy the "fair and equitable" standard of § 1129(b)(2)(A). Subsection (b)(2)(A)(i) allows cram down of a dissenting impaired secured class if the members of the class are allowed to retain their lien on the secured property. Additionally, such class members are to receive cash payments with face amounts of at least the allowed amount of the secured claim, and a present value equal to the value of their collateral. Respecting The Bank's secured claims which are treated in Classes One, Three, Four, Five and Six, The Plan fails to indicate that The Bank would be allowed to retain its liens under these classes. In fact, Article X (Revesting) of The Plan specifically indicates that the Debtors, upon confirmation, "shall be vested with full ownership of and dominion over their property and assets free and clear of all claims, *liens,* and other creditor interests that arose prior to the filing date." (Emphasis added). Clearly Article X of The Plan is in derogation of § 1129(b)(2)(A)(i) and, thusly, does not provide a fair and equitable treatment of the affected Classes.

 The Debtors' Plan is also deficient as it violates § 1129(b)(2)(A)(ii) respecting Class One, where they attempt to surrender the collateral without assuring that The Bank would receive the indubitable equivalent of its claim.

 Whether a plan provision provides a secured creditor with an indubitable equivalent of its original security pursuant to § 1129(b)(2)(A)(iii) depends on:

(i) whether the substituted security completely compensates the creditor; and

(ii) the likelihood the creditor will receive payment.

(*In re Murel Holding Corp.,* 75 F.2d 941 (2d Cir.1935). *See also,* 124 Cong.Rec. H 11089 (daily ed. Sept. 28, 1978) (Emphasis added).

In support of their proposed treatment of The Bank's secured claim under Class One (i.e., surrendering the four office units to The Bank as payment in full), the Debtors rely upon the Fifth Circuit's ruling in the *Matter of Sandy Ridge Devel. Corp.,* 881 F.2d 1346 (5th Cir.) rehg. denied, 889 F.2d 663 (5th Cir.1989). That reliance, however, is misplaced. In *Sandy Ridge,* the debtor proposed to surrender the property to its mortgagee "for a credit on the indebtedness to the extent of the value of [the surrendered property]". (Emphasis added). In the present case, the Debtors have a different intention. They propose to surrender the subject property to The Bank as payment "in full" of their obligation under the Class One note. Further, the Fifth Circuit found in *Sandy Ridge* that the bank debt was equal to the value of the property being surrendered by the debtor corporation. (Id., at 1350). No such value determination has been made in the present case, as the Debtors' valuation data is insufficient to allow a determination of indubitable equivalence.

Under Class One, the secured debt owed to The Bank totals $146,646.17, plus accrued interest and charges. This amount is undisputed. This obligation is secured by a mortgage on the aforesaid condominium offices. Under the Plan, the Debtors simply wish to unload the units on The Bank in full satisfaction of the obligation. To insure that The Bank receives the indubitable equivalent of its claim by this proposed treatment, a valuation of these office units is essential to satisfy § 1129(b)(2)(A)(iii). This is particularly necessary in this case, since the record reflects various values for these office units. For example, a sheriff's appraisal on these units pertaining to a prepetition foreclosure sale March 3, 1993 gave a total value of $60,000.00. Upon reappraisal by the sheriff, the same properties were given a value of $99,000.00 at a foreclosure sale scheduled for April 21, 1993. Subsequently, the Debtors scheduled the same property in their petition schedules at a value of $140,000.00. In their Disclosure Statement, the same property was valued in an amount of $190,000.00. These conflicting values on the same property, applied during a period of less than six months, necessitates an accurate appraisal to insure that the proposed property surrendered to The Bank is, in fact, an indubitable equivalent of its claim.

 To satisfy § 1129(b)(2)(A)(iii), the Debtors obtained a Real Property Opinion of Value (RPOV) dated September 21, 1993

798

which indicated a sale value of $160,000.00 for the four office units. For purposes of satisfying the cram down standard of § 1129(b)(2)(A)(iii) a real property opinion of value is an insufficient means of assessing true value, particularly when several other conflicting values have been provided on the subject property. Although it may be a reliable indicator of value in some circumstances, a report of opinion value falls substantially short of the standards of a certified appraisal and, in fact, is not an appraisal. This point was evinced from the testimony of Kevin B. Riley, who issued the report of opinion value and testified on behalf of the Debtors at the confirmation hearing. Significantly, he testified that such a report is not an appraisal and, although it includes certain appraisal techniques, it does not stand up as an appraisal report. (Riley, Direct Exam.). He testified, unequivocally, that he did not appraise the subject property (Riley, Cross-Exam.). Mr. Riley's testimony was quite credible. In a report of value opinion, as opposed to an actual appraisal, the degree of subjectivity may be heightened. (*Id.*). The term "letter opinion of value" is used interchangeably with the term "real property opinion value". The letter of opinion value is an estimated figure and is not a firm figure regarding the value of a property. (*Id.*) Thusly, the Debtors' report of value opinion does not rise to the level of a certified appraisal of value and, consequently, the Debtors' surrender of the office units to The Bank in full satisfaction of the Class One secured debt is not an indubitable equivalent of The Bank's claim.

Accordingly, The Bank's objection to plan confirmation is hereby sustained, and the Debtors' proposed Plan is hereby denied confirmation. Having so found, the remaining points of objection need not be addressed and the Debtors are to appear on March 1, 1994 at 9:15 A.M. and show cause why their Chapter 11 case should not be dismissed.

IT IS SO ORDERED.