### In re THORNEBROOK DEVELOPMENT CORPORATION, Debtor.

**Bankruptcy No. 88–00117.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

Feb. 14, 1989.

Lansing J. Roy, Keystone Heights, Fla., for debtor.

Valerie J. Hall, Jacksonville, Fla., and Patricia Redmond, Miami, Fla., for defendant FSLIC.

### MEMORANDUM OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This case requires the Court to decide whether the Debtor's proposed transfer of real property in satisfaction of a creditor's secured claim constitutes the "indubitable equivalent" of such secured claim for purposes of confirmation of a plan of reorganization under Section 1129(b) of the Bankruptcy Code. A confirmation hearing was held on December 1, 1988. The parties have submitted post-hearing legal memoranda.

The corporate Debtor is the owner of real property subject to a promissory note and mortgage in favor of Cypress Savings Association, to which FSLIC has succeeded as the party in interest.[1] As additional security for the loan, two principals of the Debtor corporation and their spouses, executed a document entitled Unconditional

---

1. Cypress Savings Association is in receivership to FSLIC, and FSLIC has been substituted as the party in interest.

Guaranty of Payment and Performance, by which they personally guaranteed payment of the loan by the corporation. The Debtor defaulted on the loan on March 1, 1988, and subsequently filed its Chapter 11 petition.

Early in this case, in connection with a stay relief motion, Debtor and FSLIC stipulated to the value of Debtor's real property as $1,134,309.00, for the purposes of considering adequate protection payments, relief from the automatic stay, and formulating a plan of reorganization.

The Debtor proposes a plan of reorganization in which it would transfer the real property to FSLIC in complete satisfaction of the loan it secures. Although the Debtor argued otherwise at the confirmation hearing, an additional consequence of the transfer would be an effective bar to any action against the individual guarantors to enforce their obligations under their Unconditional Guaranty of Payment. Debtor argues FSLIC will receive the "indubitable equivalent" as required by Section 1129(b)(2)(A)(iii), because the stipulated value of the property significantly exceeds the debt. FSLIC objects to confirmation of the plan on this basis. It argues that the *mere possibility* of recovering full payment, after the property is sold, and the expenses of sale are paid is not the equivalent of a cash payment in full. A mortgagee does not gamble on market fluctuations or other exigencies of sale. The Court agrees.

In order for the Court to confirm a plan of reorganization, the Debtor must satisfy the requirements specified in Section 1129 of the Code. Each class of claims must either accept the plan or not be impaired under the plan. Section 1129(a)(8). A plan can be confirmed in spite of a class' objection if

> all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met ... if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Section 1129(b)(1). The "fair and equitable" requirement is described by Section 1129(b)(2) as:

> (A) With respect to a class of secured claims, the plan provides—
>
> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

Section 1129(b)(2)(A)(i)–(iii).

The Louisiana bankruptcy court, in *In re Sandy Ridge Development Corp.*, 77 B.R. 69 (Bkrtcy.M.D.La.1987), *aff'd.*, 18 BCD 13 (5th Cir.1988), explained that a debtor must satisfy one of the three alternatives listed above for confirmation over a class' objection:

> Bankruptcy Code § 1129(b)(2) requires confirmation of a Chapter 11 plan on request of the proponent despite rejection of the plan by one or more classes if the plan does not discriminate unfairly and if the plan is "fair and equitable." There is no substantial question raised in this case about unfair discrimination. With respect to secured creditors, the phrase "fair and equitable ... includes" the satisfaction of one of the following three tests by the provisions of the plan:
>
> (1) The creditor is to retain his lien and is to receive *cash payments* which have a present value equal to the claim;
>
> (2) The property is to be sold under the plan, and the creditor either receives the

sales proceeds or the "indubitable equivalent" of the sales proceeds; or

(3) The creditor realizes the "indubitable equivalent" of his claim.

*Id.,* 77 B.R. 69 at 71 (emphasis in original).

This plan can only be confirmed over the creditor's objection if the Court finds that through the transfer of property in full satisfaction of the debt, the Debtor realizes the "indubitable equivalent" of his claim. Under the circumstances of this case, the Court is not able to make such a finding. Debtor cites no authority for the proposition that a forced transfer of property is the equivalent of payment in full of the claim or the retention of the rights of a secured creditor to foreclose its mortgage and to pursue any deficiency against all obligors on the note.

In *Sandy Ridge, supra,* the Court denied confirmation of a plan proposing the forced transfer to a secured creditor, in full satisfaction of the debt, of real property whose value had not been established and the effect of which was to discharge non-debtor guarantors. The Debtor attempts to limit or distinguish the holding in *Sandy Ridge* to situations where the value of the property has not been established. The Debtor argues that where the creditor has stipulated to value, as here, the Court can find the creditor will receive the stipulated amount in satisfaction of its claim. The Court can then determine whether any deficiency will result, and confirm the plan through the use of the stipulated value. Debtor's argument departs from reality at this point.[2] The Court cannot find the creditor is receiving the "indubitable equivalent" of its claim based on a hypothetical realized value where there is "not sufficient margin for valuation error to permit the conclusion that the secured creditor will indubitably realize the equivalent of his claim." *In re Sandy Ridge, supra,* at 79. As *Sandy Ridge* points out, "the issue remains in doubt; so long as there is doubt, the conclusion is not indubitable."

The legislative history of Section 1129[3] indicates that abandonment of property to a secured creditor is the indubitable equivalent, since the creditor then retains all of its bargained for state law rights, including that of seeking a deficiency. Under the deed-back provision planned by this Debtor, FSLIC will receive title to real property, but may never realize "full satisfaction of its claim". FSLIC would be precluded from seeking a deficiency judgment or proceeding against guarantors.

Under the terms proposed, the plan cannot be confirmed over the objection of FSLIC as it does not meet the requirements of § 1129(b) and accordingly, confirmation will be denied.

A separate order will be entered in accordance herewith.

---

**2.** The Court rejects this argument. Under Section 506 of the Code, the value of a secured claim "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." When the parties stipulated to the value asserted now, there was no proposed disposition of the property before the Court. Under the scenario presented here, the wily debtor can lull a secured creditor into believing that it is fully secured and will receive payment in full with interest under a plan, and then turn around and force the creditor to depend on its liquidation of the property for any payment it is to realize.

**3.** "Abandonment of the collateral to the creditor would clearly satisfy indubitable equivalence, as would a lien on similar collateral." 124 Cong. Rec.H 11104, Sept. 28, 1975, S 17421, Oct. 6, 1978.