**In re MOUNTAIN SIDE HOLDINGS, INC., et. al., Debtors.**

**James M. BUTTERS, Appellant,**

**v.**

**MOUNTAIN SIDE HOLDINGS, INC., et. al., Appellees.**

Civ. A. No. 92–K–1144.
Bankruptcy No. 91–21723 RJB.

United States District Court,
D. Colorado.

June 30, 1992.

**422**

M. Frances Cetrulo and Edwin G. Perl-
mutter, Berenbaum & Weinshienk, P.C.,
Denver, Colo., for appellees.

Michael J. Pankow, Dixon & Dixon, P.C.,
Denver, Colo., Harry D. Dixon, Jr., Dixon
& Dixon, Omaha, Neb. for appellant.

## ORDER ON MOTION FOR STAY
## PENDING APPEAL

KANE, Senior District Judge.

This matter is before me on James M.
Butters' emergency motion for stay pend-
ing appeal. Butters appeals the bankrupt-
cy court's May 29, 1992 judgment confirm-
ing a first amended joint plan of reorgani-
zation submitted by the four debtor enti-
ties.[1] Butters contends that an emergency
stay is necessary because, under the ap-
proved reorganization plan to take effect
June 29, 1992, he will irrevocably lose his
$1.5 million junior lien on the assets of a
cable system held by several of the entities.
Butters is concerned that his appeal will
become moot if the plan is permitted to
take effect and his lien is extinguished.

To obtain a stay pending appeal, Butters
must demonstrate: (1) he is likely to suc-

ceed on the merits of his appeal, (2) he will
suffer irreparable injury if the stay is not
granted, (3) the harm he will suffer out-
weighs the potential injury to the Trustee
if the stay were granted, and (4) a stay is in
the public interest. *Intercontinental En-
ters., Inc. v. Keller (In re Blinder, Robin-
son & Co.)*, 127 B.R. 267, 274 (D.Colo.1991).
Guided by Bankruptcy Rule 8005, which
provides that a motion for relief pending
appeal must ordinarily be presented first to
the bankruptcy court, Butters requested a
stay from the court below. That motion
was denied on June 17, 1992. When
presented with a similar motion, a district
court need only determine whether the
bankruptcy court's denial of the stay was
an abuse of discretion. *See Community
Fed. Sav. & Loan Ass'n v. Stratford Hotel
Co. (In re Stratford Hotel Co.)*, 120 B.R.
515, 516 (E.D.Mo.1990). In considering
whether the bankruptcy court abused its
discretion, its legal conclusions may be re-
viewed *de novo*, but its factual findings
should be reversed only if clearly errone-
ous. *Id.* at 517.

The bankruptcy court did not abuse its
discretion in denying Butters' motion for
stay. The nub of Butters' argument rests
on the bankruptcy court's valuation of But-
ters' junior lien on the assets of a cable
system owned by the debtors. In its order
approving the plan, the bankruptcy court
found that the system was presently worth
approximately $5.243 million. From this
value, the court subtracted approximately
$357,000 to account for selling costs, trans-
fer costs and needed repairs. Accordingly,
the court found the net value of the system
to be $4.886 million. Since the cable sys-
tem was subject to a senior lien of $5.090
million, the bankruptcy court concluded
that Butters' secured interest in the system
was of "inconsequential value." There-
fore, the court denied Butters' § 1111(b)(2)
election, which would have required the
debtors to treat Butters' entire $1.5 million

---

1. These entities are: Mountain Side Holdings,
Inc., Premiere Cable One, Ltd., Premiere Cable

Two, Ltd., and Mountain Side Cable, Inc.

claim as secured. This permitted the court to confirm the plan, which provided Butters' with only a limited partnership in the reorganized entity and no separate consideration for the value of his lien.

■ Butters challenges the bankruptcy court's confirmation of the plan on three grounds. First, he contends that the bankruptcy court erred as a matter of law in deducting costs of sale to arrive at net market value of the cable system. Butters claims that, since the plan provides that the reorganized debtor will retain the cable system, costs of sale are irrelevant. Had those costs not been deducted, Butters argues, the value of the system would have exceeded the value of the senior lien, and he would have been entitled to an election under § 1111(b)(2) because the value of his junior lien would not have been insubstantial. Although Butters asserts that "a vast majority of the courts that have considered the issue" support his position that costs of sale should not be deducted, (*see* Emergency Mot. for Stay at 8), Butters ignores significant authority to the contrary.

■ The valuation of a creditor's interest in the estate's interest in property is governed by § 506 of the Code. That section requires the court to determine value "in light of the purpose of the valuation and of the proposed disposition of such property." 11 U.S.C. § 506(a). Thus, "[i]f retention and use by the debtor of the collateral is proposed, there is generally no reason to assume for purposes of valuation that the collateral would be disposed of on a 'forced sale' basis." 3 *Collier on Bankruptcy* § 506.04 at 506–31 to –32 (L. King 15th ed. 1992). Instead, a "best use" or "going concern" value is appropriate. *Id.* at 506–32. In this way, the mandate of § 506(a) that the court consider proposed use in its valuation is met.

■ This does not mean, however, that consideration of costs of sale are inappropriate. Whether value is determined on a "forced sale" or "best use" basis, there is still a hypothetical sale. Costs of disposition of the property must be accounted for. Accordingly, when a debtor proposes to retain an asset, a majority of courts have held that costs of sale are appropriately deducted to arrive at the value of a creditor's interest under § 506(a). *See In re Overholt*, 125 B.R. 202, 215 (Bankr. S.D.Ohio 1990) ("The vast weight of authority ... is to ascertain the extent of the creditor's interest by subtracting the cost of the hypothetical liquidation costs from the total value of the property."); *In re Robbins*, 119 B.R. 1, 4 (Bankr.D.Mass. 1990). "[T]he potential costs of disposition should be those that would be anticipated by a creditor in disposing of property in a commercially reasonable manner." *In re Claeys*, 81 B.R. 985, 992 (Bankr.N.D.1987). Accordingly, the bankruptcy court did not err in subtracting estimated costs of sale to arrive at the net value of Butters' interest in the system.

■ Butters' second argument is that the Bankruptcy Code does not permit the debtor to grant a creditor a limited partnership interest in a reorganized entity under a plan. That argument is likewise flawed. Section 1123(a)(5)(J) expressly permits the issuance of securities to implement a plan. The term "security" is defined under the Code to include an "interest of a limited partner in a limited partnership." 11 U.S.C. § 101(49)(A)(xiii). Although Butters asserts that another Code section, § 1123(a)(6), prohibits reorganized corporations from issuing nonvoting equity securities, the reorganized entity in this case is a limited partnership, not a corporation.[2] The § 1123(a)(6) restriction does not apply.

■ Finally, Butters contends that the plan should not have been confirmed because it did not meet the standards of fairness under § 1129(b)(2). In essence,

---

**2.** Butters also claims that this section applies to a debtor corporation regardless of whether that corporation reorganizes into a non-corporate form. The structure of § 1123(a)(6) is clearly directed to corporate debtors who do not restructure into another form, or to debtors who restructure into the corporate form by transfer of estate property, *see* 11 U.S.C. § 1123(a)(5)(B), or by merger or consolidation, *see id.* § 1123(a)(5)(C). Neither situation is present here.

Butters simply restates his belief that he cannot be forced to accept a proportional limited partnership interest in the reorganized entity. As shown above, this is permitted under the Bankruptcy Code. Butters, clearly in an impaired class, receives no worse treatment than he would have had the debtors' estate been liquidated. Holding a junior lien on assets which were fully encumbered, Butters' claim in the amount of $1.5 million was unsecured. When viewed in this light, Butters' treatment under the plan is not as he would like, but it is permissible under the Bankruptcy Code.

■ Since Butters has failed to demonstrate a substantial likelihood of prevailing on the merits under the first element for stay pending appeal, his motion is denied. I note, as well, that the remaining elements do not fall in his favor. As several creditors objecting to his motion have noted, Butters will not necessarily suffer irreparable injury. He is currently pursuing a state court action against several individuals who were principals in the debtor entities based on their personal guarantees of the $1.5 million debt. In addition, these creditors have demonstrated that a stay will be prejudicial to them and the public interest. Under the reorganization plan, unsecured creditors (including a workmen's compensation insurance carrier) receive much better treatment than they would if there was a liquidation. The plan contains a fairly stringent timeline for consummation. Failure to consummate would permit the senior creditors to foreclose, leaving junior and unsecured creditors in a much worse position.

For these reasons, the bankruptcy court did not abuse its discretion in denying Butters' motion for relief from the stay. His motion in this court is denied for the same reasons.