**In the Matter of ATLANTA SOUTHERN BUSINESS PARK, LTD., Debtor.**

**Bankruptcy No. A93–63052–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 12, 1994.

· James L. Paul, Matthew J. McCoyd, Johnson & Montgomery, Atlanta, GA, for debtor.

David G. Bisbee, Bisbee, Rickertsen & Herzog, Atlanta, GA, for NationsBank of Georgia.

## *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the request for confirmation of the Chapter 11 plan of reorganization by Atlanta Southern Business Park, Ltd. (hereinafter "Debtor"). The Debtor seeks the confirmation of its plan over the objections of NationsBank of Georgia, N.A. (hereinafter "NationsBank"), a secured creditor. The matters involved herein constitute a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(L). The parties hereto presented their arguments and evidence at a confirmation hearing held August 18, 1994, after which the Court took these issues under advisement. Based upon the reasons set forth below, the Court will confirm the Debtor's plan.

### FACTUAL BACKGROUND

The Debtor in this case is a California limited partnership organized in 1981 for the purpose of purchasing approximately 200 acres of land located in Clayton County, Georgia. The property sits approximately one mile south of Southlake Mall on Georgia Highway 54 in an area of matured industrial, commercial, and retail development. The Debtor has obtained all zoning and utilities necessary for the property's development. The actual acquisition of the property occurred shortly after the Debtor's formation when it purchased the tract of land from The Citizens & Southern National Bank (hereinafter "C & S"), which had previously foreclosed upon the property. The purchase of the property was financed by C & S pursuant to a purchase money indebtedness in the approximate amount of $2,600,000.00. Since

it acquired the land, the Debtor has reduced the purchase money indebtedness to approximately $565,000.00, which is currently held by NationsBank as the successor to C & S.

After purchasing the 200 acres, the Debtor proceeded with the development and sale of various parcels of land. Portions of the business park were sold to such entities as Tensar, Federated Stores, Ansley Development Corporation, and KLLM Trucking Facilities. Moreover, the Debtor has improved three fully developed parcels, which it continues to own and operate, including a 15,800 square foot office service center, a 7,200 square foot office center, and a shopping center with 19,335 square feet of retail space plus a 4,000 square foot office building presently occupied by a bank. In addition to the income producing property listed above, the Debtor continues to own and market 118 acres of developed property within the business park. Of this property, approximately 110 acres is encumbered by NationsBank's purchase money lien to secure its claim of $565,000.00.

In 1993, the Debtor began to experience financial difficulties in the form of temporary cash flow problems. Specifically, it became delinquent on one monthly payment due to Canada Life Assurance Company, which holds a Deed to Secure Debt on the shopping center property owned by the Debtor within the business park. As a result, Canada Life declared the Debtor to be in default, accelerated the indebtedness, and commenced foreclosure proceedings against the property. During this time, the maturity dates on some of the loans secured by other fixed assets of the Debtor were approaching. Several of the lenders holding the fixed asset loans were either unable or unwilling to respond to the Debtor's inquiries about terms of renewal.

Faced with these financial difficulties, the Debtor filed its Chapter 11 petition in this Court on February 26, 1993. Soon thereafter, the Debtor filed its plan of reorganization (hereinafter "Plan") which is currently before the Court for consideration.[1] Any and all objections to the Plan have been settled, except for that of NationsBank, an impaired creditor, who objects to its treatment under the Debtor's Plan, which is as follows:

> On the Consummation Date, Debtor Atlanta Southern shall transfer to NationsBank a combination of cash and real estate constituting tracts of the NationsBank Collateral Property sufficient to satisfy the NationsBank claim in full. The combination of cash and real estate transferred to NationsBank shall be sufficient in value, as determined by this Court, to constitute the indubitable equivalent of the NationsBank Secured Claim, within the meaning of 11 U.S.C. § 1129(b)(2)(A)(iii). The combination of cash and real estate transferred to NationsBank shall be such as to maximize the cash distributions to NationsBank and minimize the land transferred to NationsBank.

*See* Plan at § 5.4.A(3) (as amended Aug. 8, 1994).

In accordance with its proposed Plan, the Debtor filed a Motion with the Court to make a valuation of NationsBank's collateral pursuant to 11 U.S.C. § 506. After an evidentiary hearing held August 9, 1994, the Court valued that property at $1,301,952.40.[2] For the purpose of confirmation, the Debtor acknowledged that the debt owing NationsBank, as of August 9, 1994, was $663,150.23, comprised of the following:

| | |
|---|---|
| Principal | $542,330.22 |
| Interest | 79,925.91 |
| Appraisal Costs | 6,890.10 |
| Attorneys' Fees | 34,004.00 |

Moreover, the Debtor has acknowledged that NationsBank will incur holding and disposal costs amounting to $149,632.00, including costs for interest on the estimated one year

---

1. The Debtor has filed amendments to the proposed Plan on two occasions.

2. The specific subjects of this valuation hearing were three tracts of land within the business park which the Court valued as follows:

21.4 acre tract — $482,117.30
28.4 acre tract — $640,595.20
8.8 acre tract — $179,239.90

As an Order has yet to be entered on this issue, this Order regarding the confirmation of the Debtor's Plan also will serve as an Order on the 11 U.S.C. § 506 valuation.

holding period, the estimated real estate commission of a real estate broker, appraisal matters, environmental studies, plus closing and miscellaneous expenses. Based upon the property's appraised value, the Debtor plans to convey a portion of NationsBank collateral, plus $144,886.00 in cash, in order to equal the full dollar amount of its secured claim.

NationsBank has not voted to accept the Debtor's Plan, claiming that it will not receive the "indubitable equivalent" of its secured claim as required by 11 U.S.C. § 1129(b)(2)(A)(iii). Specifically, NationsBank argues that · the conveyance of the property based upon this Court's valuation leaves for no margin of error in case it receives a lesser amount once it disposes of the property. Moreover, NationsBank points out that the Plan does not provide it with a "safety net" in the form of a lien on its remaining collateral to satisfy any deficiency that may exist. For these reasons, NationsBank requests that this Court deny the confirmation of the Debtor's Plan.

## DISCUSSION

### A.  Burden of Proof

■  Before considering whether NationsBank will receive the indubitable equivalent of its claim through the Plan, the Court must address the issue of what burden the Debtor must satisfy in proving its case. Specifically, NationsBank argues that the Debtor must prove by clear and convincing evidence that the Plan complies with the confirmation requirements of 11 U.S.C. § 1129(b)(2). Indeed, case law exists to support this argument. *See, e.g., In re S.A.B.T.C. Townhouse Ass'n,* 152 B.R. 1005, 1008 (Bankr.M.D.Fla. 1993); *B.W. Alpha, Inc. v. First City Nat'l Bank (In re B.W. Alpha, Inc.),* 100 B.R. 831, 833 (N.D.Tex.1988); *In re Future Energy Corp.,* 83 B.R. 470, 481 (Bankr.S.D.Ohio 1988); *In re Stoffel,* 41 B.R. 390, 392 (Bankr. D.Minn.1984); *see also In re Sandy Ridge Dev. Corp.,* 77 B.R. 69, 73 (Bankr.M.D.La. 1987), *rev'd,* 881 F.2d 1346 (5th Cir.1989) (suggesting that "indubitable equivalent"

standard requires proof beyond a reasonable doubt).

The Supreme Court's decision in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), however, seriously undermines the position posited by NationsBank and the cases cited above. In *Grogan,* the Court held that the preponderance of the evidence standard applies to actions concerning the dischargeability of debts under 11 U.S.C. § 523(a). In so doing, the Court rejected the view of many courts that a party ·objecting to the discharge of a particular debt had to prove its case by clear and convincing evidence.[3] The Court stated further that the "preponderance of the evidence" standard normally applies in all civil cases "unless particularly important individual interests or rights are at stake." *Id.* at 286, 111 S.Ct. at 659 (quoting *Herman & McLean v. Huddleston,* 459 U.S. 375, 389–90, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983)). After the Supreme Court's decision in *Grogan,* the trend among lower courts is to require proof by a preponderance of the evidence in situations involving "fair and equitable" treatment under 11 U.S.C. § 1129(b)(2). *See Heartland Fed. Savings & Loan Ass'n. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160, 1164–65 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451; *In re Union Meeting Partners,* 165 B.R. 553, 574 n. 17 (Bankr.E.D.Pa.1994); *Aetna Realty Investors, Inc. v. Monarch Beach Venture, Ltd. (In re Monarch Beach Venture, Ltd.),* 166 B.R. 428, 432 (C.D.Cal.1993); *In re SM 104 Ltd.,* 160 B.R. 202, 214 (Bankr.S.D.Fla.1993); *In re MCorp Fin., Inc.,* 160 B.R. 941, 960 (S.D.Tex.1993); *In re Westwood Plaza Apts.,* 147 B.R. 692, 698 (Bankr.E.D.Tex.1992); *see also In re Wermelskirchen,* 163 B.R. 793, 795 (Bankr.N.D.Ohio 1994) (holding that the burden is on the *objecting party* to demonstrate ·by a preponderance of the evidence that § 1129 has not been satisfied).

In view of *Grogan v. Garner,* the Court believes that this later line of authority rep-

---

**3.**  *See, e.g., Lee v. Ikner (In re Ikner),* 883 F.2d 986, 989 (11th Cir.1989); *Caspers v. Van Horne (In re Van Horne),* 823 F.2d 1285, 1287 (8th Cir.1987); *Martin v. Bank of Germantown (In re Martin),*

761 F.2d 1163, 1165 (6th Cir.1985); *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 423–24 (7th Cir.1985).

resents the better approach by applying the preponderance of the evidence standard. Specifically, the Court points out that in this case there are no "particularly important individual interests or rights at stake" in considering the confirmation of the Debtor's Plan. NationsBank's claim, while a significant one, does not amount to a liberty interest or constitutionally protected right. Instead, this case involves a commercial relationship between NationsBank and the Debtor, and the ultimate interest is money. Under these circumstances, it would not be appropriate to apply the clear and convincing standard.

The source of controversy regarding the burden of proof likely can be traced to the use of the word "indubitable" within 11 U.S.C. § 1129(b)(2)(A)(iii). The generally accepted meaning of this word is "too evident to be doubted." WEBSTER'S NEW COLLEGIATE DICTIONARY 583 (1979); *In re Walat Farms, Inc.,* 70 B.R. 330, 334 (Bankr.E.D.Mich.1987). As such, some courts have tended to conclude that a higher burden exists when the indubitable equivalent issue is under consideration. The Court believes, however, that the Fifth Circuit satisfactorily explained this potential problem as follows:

> [T]he debtor must show that the creditor will receive the indubitable equivalent of its claim by a preponderance of the evidence. The level of proof to show indubitability is not raised merely by the use of the word "indubitable". "Indubitable" modifies "equivalent" not "provides".

*Briscoe Enters., Ltd.,* 994 F.2d at 1165 n. 26. Therefore, the Court concludes that the Debtor must establish by a preponderance of the evidence that its Plan satisfies the requirements of 11 U.S.C. § 1129(b).

### B. The Indubitable Equivalent

■ As previously stated in this Order, NationsBank is an impaired creditor, and it has not accepted the Debtor's Plan. Nevertheless, the Bankruptcy Code allows a court to confirm a reorganization plan, notwithstanding the objections of an impaired class, provided that the plan is "fair and equitable" with respect to the treatment of the claims of each impaired class of claims that has not

accepted the plan. 11 U.S.C. § 1129(b)(1). A plan is fair and equitable if it allows a secured party to realize the "indubitable equivalent" of its claim. 11 U.S.C. § 1129(b)(2)(A)(iii). The "indubitable equivalent" standard, which comes from the pre-Bankruptcy Code case of *Metropolitan Life Ins. Co. v. Murel Holding Corp. (In re Murel Holding Corp.),* 75 F.2d 941 (2d Cir.1935), considers whether the treatment a creditor receives under the plan is completely compensatory and the likelihood the creditor will receive payment. *Id.* at 942–43; *In re Wermelskirchen,* 163 B.R. 793 (Bankr.N.D.Ohio 1994); 3 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 10–20, at 36–37 (1992). This subsection provides only a minimum requirement for confirmation, however, so a court may decide that a plan is not fair and equitable even if it is in technical compliance with the Code's requirements. *In re Pennave Props. Assocs.,* 165 B.R. 793, 795 (E.D.Pa.1994); *In re Spanish Lake Assocs.,* 92 B.R. 875, 878 (Bankr.E.D.Mo.1988).

The Debtor's Plan proposes to convey to NationsBank a portion of its collateral, based upon the Court's valuation, in complete satisfaction of its claim. NationsBank objects to this treatment, arguing that it will not receive the indubitable equivalent of its claim. In deciding whether the Plan satisfies the requirements of 11 U.S.C. § 1129(b)(2), four issues must be considered in this case: (1) the ability of the Debtor to deed back real estate in satisfaction of a claim; (2) the ability of the Court to place a value on the property for "indubitable equivalent" purposes; (3) the risk placed upon NationsBank by being forced to accept the property in satisfaction of its claim; and (4) the actual treatment received by NationsBank under the Plan. The Court will address each of these issues separately.

#### 1. THE DEED BACK OF REAL ESTATE

■ In arguing that it is appropriate for its Plan to deed back real estate to Nations-Bank in satisfaction of its claim, the Debtor relies upon the decision of *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.),* 881 F.2d 1346 (5th Cir. 1989), *reh'g denied,* 889 F.2d 663. In *Sandy Ridge,* the Fifth Circuit concluded that the

deed back of real estate in its entirety to the secured creditor met the requirements of § 1129(b)(2)(A), explaining the simple principle that, by returning all of a secured debtor's collateral, a plan necessarily provides the indubitable equivalent of the secured claim. *Id.* 881 F.2d at 1350; *see also In re Western Real Estate Fund, Inc.,* 109 B.R. 455, 464 (Bankr.W.D.Okla.1990); *In re Fursman Ranch,* 38 B.R. 907, 909 (Bankr.W.D.Mo. 1984).

Generally speaking, *Sandy Ridge* supports the proposition that there is no *per se* prohibition in the Bankruptcy Code against the deed back of property in satisfaction of the indubitable equivalent requirement. It is worth noting, however, that the facts of *Sandy Ridge* are not squarely on point with the case *sub judice. Sandy Ridge* involved an undersecured creditor receiving all its collateral under the Plan. Here, the Debtor claims that NationsBank is an oversecured creditor and, under the Plan, will receive only a portion of the collateral. Nevertheless, the Court does not believe that such a distinction automatically prevents the Debtor from carrying through with its treatment of NationsBank's claim. A plan that includes the partial return of collateral may be confirmable under certain circumstances. One circumstance occurs where, as here, the creditor is oversecured and the value of the surrendered collateral is equivalent to the amount of the creditor's claim. *See, e.g., In re Simons,* 113 B.R. 942, 946–47 (Bankr. W.D.Tex.1990); *In re Elijah,* 41 B.R. 348, 351–52 (Bankr.W.D.Mo.1984). Therefore, the Court concludes that the proposed partial deed back of NationsBank's collateral is not automatically fatal to the Debtor's Plan under the indubitable equivalent approach.

2. VALUATION BY THE BANKRUPTCY COURT

■ Having decided that it is possible for the Debtor to deed back a portion of NationsBank's collateral in satisfaction of its claim, the Court now must focus on the valuation question. The Debtor argues that the valuation of the property made by the Court pursuant to 11 U.S.C. § 506 is sufficient to establish value for the purpose of the indubitable equivalent. In opposition, NationsBank argues that the property's value must be determined at the time it disposes of the collateral at some future date after the confirmation of the Plan.

In considering this issue, the Fifth Circuit in *Sandy Ridge* rejected an argument similar to the one currently asserted by NationsBank, stating as follows:

> [W]e must reject [the creditor's] argument that the bankruptcy court cannot set the value of property but instead must in all instances require the debtor to abandon that property and let the foreclosure sale market determine its price. This is simply not required by the Code. Section 506(a) provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." It seems contemplated that this determination is to be made by the court. Furthermore, we have recently held that "[t]he valuation of the assets of a debtor in bankruptcy . . . is an integral part of the confirmation process under Chapter 11."

*Sandy Ridge,* 881 F.2d at 1354 (footnotes omitted); *see also In re Hock,* 169 B.R. 236, 239–40 (Bankr.S.D.Ga.1994); *In re Wermelskirchen,* 163 B.R. 793, 797–98 (Bankr. N.D.Ohio 1994) (noting that valuation of property was essential in considering indubitable equivalent issue); *In re Elm Creek Joint Venture,* 93 B.R. 105, 111–12 (Bankr. W.D.Tex.1988). The Court finds the reasoning of *Sandy Ridge* persuasive, and it rejects NationsBank's argument as to the proper time for valuation. As *Sandy Ridge* points out, value under 11 U.S.C. § 506(a) is to be determined in light of the purpose of the valuation and of the proposed disposition or use of the property. *See also Brown & Co. Securities Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 252 (4th Cir.1991); *Butters v. Mountain Side Holdings, Inc. (In re Mountain Side Holdings, Inc.),* 142 B.R. 421, 423 (D.Colo.1992). In this particular case, valuation was made for the purpose of plan confirmation. One of the many issues that may come up during confirmation is whether the proposed plan provides a creditor with the indubitable equivalent of its claim. As such,

a bankruptcy court may value property under 11 U.S.C. § 506(a) for the purpose of the indubitable equivalent standard.[4]

■ More importantly, when valuation is for the purpose of plan confirmation, the value must be determined as of the date the plan is confirmed, and not at some other date. *In re Landing Assocs., Ltd.*, 122 B.R. 288, 292 (Bankr.W.D.Tex.1990); *In re Seip*, 116 B.R. 709, 710–11 (Bankr.D.Neb.1990). Nothing in the Code requires the Court to treat a valuation in an indubitable equivalent situation any differently. Therefore, the Court must reject NationsBank's argument that value is to be determined at some future date when it disposes of the property. In view of these circumstances, the Court concludes that it has the authority under 11 U.S.C. § 506(a) to value the property for the purpose of 11 U.S.C. § 1129(b)(2)(A)(iii), and the Debtor may utilize this value in demonstrating that NationsBank will receive the indubitable equivalent of its claim.

### 3. RISK PLACED UPON NATIONSBANK

■ In arguing against its treatment under the Plan, NationsBank points out that it not only will be receiving the property, but it also will be receiving the burden of sale and the attendant risk of loss should the property go for less than the valued price. NationsBank contends that by proposing to satisfy its claim based strictly upon the Court's findings under 11 U.S.C. § 506(a), the Debtor's Plan provides it with no margin for error in valuation. As such, NationsBank argues that it is not receiving the indubitable equivalent of its claim. *See, e.g., Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 409 (5th Cir.1985); *Metropolitan Life Ins. Co. v. San Felipe @ Voss, Ltd. (In re San Felipe @ Voss, Ltd.)*, 115 B.R. 526, 530–31 (S.D.Tex.1990); *B.W. Alpha, Inc. v. First City Nat'l Bank of San Angelo, N.A. (In re B.W. Alpha, Inc.)*, 100 B.R. 831, 833 (N.D.Tex.1988).

The Court believes that these concerns of NationsBank are valid ones. Nevertheless, they go to the issue of the value of the property and not plan confirmation. By way of brief and oral argument during the 11 U.S.C. § 506(a) hearing, NationsBank pointed out, and correctly so, that the valuation process needed to be conservative. The reasons for doing so, as one court has stated, are as follows:

> First, the Plan shifts the burden of sale of the [property] from the Debtors to the secured creditor. By doing so, the Debtors have shifted the risk of loss, as well as the potential for gain, to the secured creditor.... Second, the secured claimant will not be earning interest on this portion of the secured claim until such time as the property is sold and converted into cash. The secured claimant is, in effect, getting a partial payment in kind that must be turned to cash prior to receiving a return.... Third, valuation is not an exact science, and the chance for error always exists. A conservative approach should, therefore, be taken in order to protect the secured creditor in this regard.

*In re Simons*, 113 B.R. 942, 947 (Bankr. W.D.Tex.1990).

After considering all the evidence and testimony presented during the valuation hearing, the Court did, in fact, place a conservative value on the property. Specifically, the Court valued the three tracts of land constituting NationsBank collateral at $1,301,952.40. Admittedly, this value is much greater than that offered by NationsBank through its expert appraiser of only $710,000.00. On the other hand, it is considerably lower than the value offered by the Debtor's appraiser of over $2,100,000.00. When two appraisal reports conflict, a court "must determine the value based on the credibility of the appraisers, the logic of their analysis, and the persuasiveness of their subjective reasoning." *In re Park Ave. Partners*, 95 B.R. 605, 610 (Bankr.E.D.Wis.1988). Basically, the Court's valuation of the property in this case came down to comparing the professional judgment of each appraiser. *See, e.g., In re*

---

**4.** At the time of the valuation hearing in this case, it was no secret that the confirmation of the Debtor's Plan would hinge upon whether the Plan provided NationsBank with the indubitable equivalent of its claim. *Cf. In re Thornebrook Dev. Corp.*, 96 B.R. 350, 352 n. 2 (Bankr.N.D.Fla. 1989) (proposed disposition of property through plan was not before court at time of valuation).

*Vienna Park Props.,* 132 B.R. 517, 521 (Bankr.S.D.N.Y.1991). After doing so, the Court found the Debtor's expert more convincing and his appraisal much more realistic.

Nevertheless, the Court adjusted downward the appraised value in view of the inherent risks NationsBank will face if it is forced to accept the property in complete satisfaction of its claim. As evidence of this conservative valuation, the Court points out, as has the Debtor in its brief, that the per acre value placed upon the property is less than that received upon every sale of property inside the industrial park, except for one tract which was disadvantaged by poor topography. For example, the Court fixed values at amounts varying between $23,000.00 and $24,000.00 per acre. The most recent sale of property within the industrial park, which took place earlier this year and is perhaps the best indicator of the property's value, sold for $32,500.00 per acre. In view of these facts, the Court concludes that the property's conservative valuation reflects the inherent risk NationsBank will face if it is forced to receive the property in satisfaction of its claim against the Debtor.[5]

■ In a related argument, NationsBank asserts that the Debtor's Plan must provide NationsBank with a "safety net" in the event it does not realize the full present value in cash at a later date. Specifically, NationsBank contends that the Plan should provide for it to retain its lien on the portions of the collateral it does not receive. To do so would allow NationsBank to satisfy any deficiency once it disposes of the property at a future date. The Court does not believe, however, that such a "safety net" is an absolute necessity under the indubitable equivalent approach. It is true that the confirmation provisions of the Code contemplate lien retention as a way to determine if a plan offers fair and equitable treatment to an impaired secured creditor. *See* 11 U.S.C. § 1129(b)(2)(A)(i). The provision on lien retention, however, is offered as an *alternative* to, and not a requirement of, the indubitable equivalent test. That is not to say that lien retention may not be necessary under some circumstances. For example, where a plan does not provide with specificity the portions of land to be transferred, and where the value of such property has not been clearly established, lien retention may be necessary to give rise to a confirmable plan. *See, e.g., In re Walat Farms, Inc.,* 70 B.R. 330, 334–37 (Bankr.E.D.Mich.1987) (lien retention required where real estate market was depressed and unstable). Nevertheless, the failure of the Debtor to provide for such a safety net in its Plan is not an automatic violation of the indubitable equivalent standard.

### 4. TREATMENT OF NATIONSBANK'S CLAIM

■ Having decided the parameters within which the Debtor may treat NationsBank's claim, the Court now turns to the question of whether NationsBank will receive the indubitable equivalent of its claim under the Plan. In accordance with the Plan, the Debtor proposes to satisfy NationsBank's claim by delivering $144,886.00 in cash[6] and conveying 30.24 acres of its collateral, valued at $668,071.90 pursuant to 11 U.S.C. § 506(a). This property is contiguous and has sufficient road and rail access. Moreover, NationsBank and its successor will have signage rights for the purpose of advertising the property as part of the Atlanta Southern Business Park. NationsBank will lose its lien on the rest of its collateral. Nevertheless, in view of the specificity of the property to be transferred, coupled with a conservative valuation that takes into consideration the risks NationsBank will face, lien retention is not necessary in this case.

---

5. On this issue, the Court points out that it would be inappropriate to value conservatively the property *and* require the Debtor to provide a margin of error of, for example, thirty percent. Both these measures serve the same purpose of compensating a creditor for the risk it will incur upon being forced to accept the collateral in lieu of cash payments. If the Debtor's Plan accorded both of these benefits to NationsBank, NationsBank would be receiving a greater payout under the Plan than it is entitled to receive under the indubitable equivalent standard.

6. This cash represents the net proceeds from a previous sale of 9.55 acres of NationsBank collateral.

NationsBank's claim against the Debtor amounts to $663,150.23, as of August 9, 1994. The Debtor's conveyance of the real property under the Plan should satisfy that claim. In addition to its overall claim against the Debtor, NationsBank estimates that it will incur various holding and disposal costs between the time it receives the property and before it can dispose of it. The Debtor has conceded that these expenses must be included for the purpose of determining indubitable equivalence, and the cash transfer in addition to the property conveyance will be sufficient to cover these estimated expenses.[7]

In view of all the facts and circumstances of this case, the Court concludes that the Debtor will provide NationsBank with the "indubitable equivalent" of its claim for the purpose of 11 U.S.C. § 1129(b)(2)(A)(iii). The treatment the Plan accords NationsBank is completely compensatory, and the likelihood that NationsBank will receive payment is high. As such, the Debtor's Plan satisfies the "fair and equitable" requirement of 11 U.S.C. § 1129(b)(1).

### C. Confirmation Requirements

Having considered the issue of whether NationsBank will receive the indubitable equivalent of its claim, the Court must now determine if the Debtor's Plan satisfies the confirmation requirements of 11 U.S.C. § 1129. If the Plan does not satisfy fully the requirements of § 1129(a), it may still be confirmed under the provisions of § 1129(b). After reviewing the Plan, the Court makes the following conclusions as to each specific requirement for confirmation.

The Plan complies with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The proponents of the Plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2).

The Plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). All payments made or proposed under the Plan for services and expenses have been fully disclosed and appear to be reasonable, and those payments to be fixed after confirmation are still subject to the Court's approval. 11 U.S.C. § 1129(a)(4). Full disclosure has been made with respect to the employment and compensation of the necessary persons proposed to serve the Debtor after confirmation, and the appointments of such persons are consistent with the interests of the creditors, equity security holders, and public policy. 11 U.S.C. § 1129(a)(5). Approval by a governmental regulatory commission is not necessary for the Debtor's Plan. 11 U.S.C. § 1129(a)(6).

Each holder of an impaired claim has either accepted the Plan or will receive under the Plan not less than what would be received in a liquidation under Chapter 7 of the Code. 11 U.S.C. § 1129(a)(7). As for the classes of claims or interests, each class has either accepted or is unimpaired under the Plan, with the sole exception of the Class 7 secured claim of NationsBank. 11 U.S.C. § 1129(a)(8). The priority claims of 11 U.S.C. § 507(a) receive proper treatment under the Plan. 11 U.S.C. § 1129(a)(9). At least one impaired class has accepted the Plan, determined without including the acceptance of the Plan by any insider. 11 U.S.C. § 1129(a)(10). The Plan is feasible as it is not likely to be followed by liquidation or a need for further financial reorganization. 11 U.S.C. § 1129(a)(11). All fees payable pursuant to 28 U.S.C. § 1930 have been paid or shall be paid under the Plan. 11 U.S.C. § 1129(a)(12). The Plan need not provide for the continuation of retiree benefits as the Debtor has no such obligations. 11 U.S.C. § 1129(a)(13).

---

7. Due to the Debtor's concession on this point, it is not necessary for the Court to analyze whether holding costs are required in a deed back plan and the indubitable equivalent standard. The Court does note, however, that confirmation would be much more difficult in cases where a debtor failed to cover such anticipated costs.

As an aside, some courts take into consideration the question of holding and disposal costs at the time of the 11 U.S.C. § 506(a) valuation instead of confirmation. See, e.g., In re Martin-

dale, 125 B.R. 32, 35 (Bankr.D.Idaho 1991). A discussion on which approach is the correct one is not necessary in this case, since the end result is the same as these costs are factored in by the time the creditor receives the property. In the context of a partial deed back plan, however, considering these expenses at the time of confirmation may be more practical once the specific portions of the collateral to be returned have been identified.

While the Debtor has failed to comply with § 1129(a)(8) due to NationsBank's failure to accept the Plan, the Plan still may be confirmed so long as NationsBank receives "fair and equitable" treatment. 11 U.S.C. § 1129(b)(1). As discussed previously in this Order, the Court finds that NationsBank will receive the indubitable equivalent of its secured claim under the Plan. As such, the provisions of 11 U.S.C. § 1129 have been satisfied, and the Court concludes that the Debtor's Plan is confirmable.

### D. Postconfirmation Matters

Notwithstanding any language in the Debtor's Plan to the contrary, this Court will retain only such jurisdiction over matters that involve the execution, implementation, modification, or interpretation of the Plan's provisions, or disputes requiring the application of bankruptcy law. *See, e.g., Zahn Assocs., Inc. v. Leeds Building Prods., Inc. (In re Leeds Building Prods., Inc.)*, 160 B.R. 689 (Bankr.N.D.Ga.1993) (Drake, J.). Furthermore, within 90 days from the entry of this confirmation Order, the Debtor shall file a report with the Court concerning the action taken toward substantial consummation of the Plan; and within 180 days from the date of this Order, the Debtor shall file a report showing substantial consummation of the Plan together with an application for final decree. Finally, this Order will enjoin all persons holding any claims, on or after the date of this Order, from taking any action to enforce rights, or alleged rights, against the Debtor, or against any assets of the Debtor, or any collateral in which said claimants assert rights, which rights, or alleged rights, are inconsistent with the rights of the secured or unsecured creditors of the Debtor, or are inconsistent with the rights of any other claimants as set out in the Plan as amended and this Order.

### CONCLUSION

In conclusion, the Court finds that NationsBank will receive the "indubitable equivalent" of its secured claim under the Debtor's Plan. As such, NationsBank's objections are **OVERRULED**. Moreover, the Plan complies with the necessary requirements for confirmation pursuant to 11 U.S.C. § 1129. Accordingly, the Debtor's Chapter 11 Plan of Reorganization, as amended, is hereby **CONFIRMED.**

**IT IS SO ORDERED.**