**In re Green Hobson RIDDLE, Jr., a/k/a G.H. Riddle, Debtor.**

**No. 10–42735–pwb.**

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

Feb. 8, 2011.

Leslie M. Pineyro, Jones and Walden, LLC, Atlanta, GA, for Debtor.

## CONCLUSIONS OF LAW WITH REGARD TO OBJECTION TO CONFIRMATION OF NORTHSIDE BANK

PAUL W. BONAPFEL, Bankruptcy Judge.

Northside Bank (the "Bank") has rejected the Chapter 11 Plan[1] filed by Green

---

1. The Debtor's plan is contained in the following documents: Second Amended Plan of Reorganization, filed on November 9, 2010[127]; First Modification to Second Amended Plan of Reorganization, filed on December 17, 2010[147] (increasing amount of monthly payment to Bank of the Ozarks); Second Modification to Second Amended Plan of Reorganization, filed on January 24, 2011[172] (adding default provisions with regard to claims in certain classes; revising treatment of claim of Internal Revenue Service, revising treatment of claim of Northside Bank; revising treatment of claim of River City Bank; and revising provisions with regard to St. Simons Trading Company); Third Modification to Second Amended Plan of Reorganization, filed on January 25, 2011[173] (revising treatment of claims of Internal Revenue Service, Georgia Bank & Trust, and Heritage First Bank); Fourth Modification to Second Amended Plan of Reorganization, filed on January 27, 2011[183] (revising treatment of Habersham Bank); and Fifth Modification to Second Amended Plan of Reorganization, filed on February 2, 2011[185] (revising treat-

Hobson Riddle, Jr., and objected to its confirmation. At the hearing on confirmation,[2] the Court determined that the Plan meets all requirements for confirmation in 11 U.S.C. § 1129(a) except the requirement in § 1129(a)(8) that all classes of impaired claims accept it, a requirement that the Debtor cannot meet in view of the Bank's rejection of the Plan as the sole member in its class. The question considered here is whether the plan is confirmable under the so-called "cram-down" provision, 11 U.S.C. § 1129(b), notwithstanding the Bank's failure to accept it.

Having announced its findings of fact with regard to this issue pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, *applicable under* Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure, at the confirmation hearing, the Court now sets forth its conclusions of law as Rule 52(a) requires.

### Positions of the Parties

The Bank is the holder of a claim in the amount of approximately $907,000[3] secured by a first priority deed to secure debt on approximately 36 acres of real property generally referred to as the "Highway 411/Dodd Blvd Property" and a second priority deed to secure debt on a condominium unit generally referred to as the "Heritage Square Property."[4] The Bank also holds a judgment lien.[5]

The Plan proposes to surrender the Highway 411/Dodd Blvd Property, which the Plan asserts is worth $1.2 million, to the Bank by execution of a quitclaim deed to the Bank upon confirmation in full satisfaction of the Bank's claim, thereby requiring cancellation of both the second priority security deed on the Heritage Square Property and the judgment lien.[6]

The Bank rejected the Plan [159] and appeared at the confirmation hearing to

ment of claim of United Community Bank in accordance with agreement announced in open court at confirmation hearing on January 27, 2011 and revising treatment of Northside Bank in accordance with announcement in open court at continued confirmation hearing on January 28, 2011). All of the documents collectively comprise the Debtor's chapter 11 plan of reorganization, which the Court refers to as the "Plan."

The treatment of the Bank's claim is set forth in § 4.12 of the Second Amended Plan of Reorganization [127 at p. 26], as amended in ¶ 8 of the Second Modification [172 at p. 3] and in ¶ 11 of the Fifth Modification [185 at p. 5]. The Fifth Modification confirms the Debtor's announcement at the continued confirmation hearing on January 28, 2011, that the proposed surrender of the real property would occur immediately upon confirmation rather than on the effective date as defined in the plan, which is 60 days later.

2. The Court began the hearing on confirmation on January 27, 2011, at which it considered all issues relating to confirmation other than those the Bank raises and conducted an evidentiary hearing with regard to the Bank's objection. The Court conducted a continued

hearing on January 28 to hear argument on the legal issues from attorneys for the Bank and the Debtor.

3. The Debtor and the Bank have stipulated that, for purposes of determining confirmation issues, the amount of the Bank's claim as of January 28, 2011, is $906,133.50 and that the per diem interest is $119. The Bank's proof of claim is Claim No. 33.

4. See Second Modification to Second Amended Plan of Reorganization [172] ¶ 8.

5. The judgment lien was recorded on March 4, 2010, in Floyd County, Georgia. *Id.* See also Bank's Proof of Claim, No. 33. Because the parties have not addressed whether the debtor has any property, otherwise unencumbered, to which the judgment lien could attach so as to provide any effective source for satisfaction of the Bank's claim, the Court need not consider the effect of the judgment lien in its analysis of the Bank's objection to confirmation.

6. Footnote 1 contains citations to the provisions of the Plan that deal with the Bank's claim.

object to its confirmation because all classes of impaired claims had not accepted it as 11 U.S.C. § 1129(a)(8) requires. As secured creditors typically are, the Bank is the sole member of its class so its vote determines the vote of that class. At that hearing, the Court determined that the Plan meets all requirements for confirmation set forth in § 1129(a), except the requirement of paragraph 8.

The Debtor requests that the Court confirm the plan pursuant to 11 U.S.C. § 1129(b). Section 1129(b) is the so-called "cram-down" provision of Chapter 11 that permits confirmation notwithstanding the absence of acceptance by an impaired class if the treatment of the impaired, nonaccepting class "does not discriminate unfairly" and is "fair and equitable."[7] With regard to a class of secured claims, like the Bank's, section 1129(b)(2)(A) requires that the plan meet one of three alternative conditions to be "fair and equitable." The Debtor invokes clause (iii) of § 1129(b)(2)(A), which states that a plan is "fair and equitable" with regard to a class of secured claims[8] if it provides for the secured creditor to realize the "indubitable equivalent" of its claim.[9]

The Bank asserts that the plan does not satisfy the requirements of § 1129(b) because it discriminates unfairly and because it does not provide for it to realize the "indubitable equivalent" of its claim.

7. 11 U.S.C. § 1129(b)(1).

8. Subparagraphs (B) and (C) of § 1129(b)(2) define what is "fair and equitable" with regard to, respectively, unsecured claims and interests. They are not applicable here because the Bank is the holder of a fully secured claim.

9. 11 U.S.C. § 1129(b)(2)(A)(iii).

10. The only evidence on these issues was the testimony of the Debtor, who has been in the

## Summary of Findings of Fact

The Court heard evidence at the hearing on January 27, 2011, with regard to the § 1129(b)(2)(B) issues and announced its findings of fact on the record. In summary, the Court found that, properly marketed, the Highway 411/Dodd Blvd Property would likely sell for a price in the range of $1.2 million to $1.3 million, possibly more; that it would bring $990,000 at a "fire sale," i.e., a sale under distressed circumstances in which the seller is under pressure to sell promptly; that selling costs would be approximately $50,000; and that, consequently, the net proceeds realizable from a "fire sale" of the property would be $940,000.[10] To determine what the Bank could realize from the property, it is necessary to deduct unpaid ad valorem taxes that have priority over the Bank's deed to secure debt. The parties agree that the amount of unpaid ad valorem taxes is $8,981.04.[11]

The net amount realizable from the Heritage Square Property, after satisfaction of the first priority deed to secure debt that another lender holds, is at least $100,000. The Debtor testified that release of the Bank's second priority deed to secure debt on the Heritage Square Property is necessary to permit the Debtor to use that property as collateral for additional financing for one of his companies, which, in turn, is essential to the feasibility of the

real estate business in Floyd County for 35 years. The Court found his testimony to be candid and credible.

11. The Court directed the parties to determine the amount of unpaid ad valorem taxes at the conclusion of the continued hearing on January 28, 2011. Counsel for the debtor reported to chambers that the Debtor and the Bank had agreed that the unpaid amount is $8,981.04.

Plan and his ability to pay other claims as the Plan proposes.

## Discussion

Section 1129(b)(1) permits confirmation of a plan over the objection of a class of creditors if the plan does not "discriminate unfairly" and is "fair and equitable" with regard to the objecting class. Section 1129(b)(2)(A) lists three alternative ways that a plan may treat a secured claim to meet the "fair and equitable" requirement. Applicable here is the third alternative, § 1129(b)(2)(A)(iii), which provides that a plan is fair and equitable if it provides for the secured creditor to realize the "indubitable equivalent" of its claim.

■ The provision for treatment of the Bank's claim is a so-called "dirt for debt" provision that seeks to satisfy a creditor's claim to the extent of the value of real estate that the lender holds as collateral. Such a provision may, under appropriate circumstances, provide the indubitable equivalent of the lender's claim. *See, e.g., Arnold & Baker Farms v. United States (In re Arnold & Baker Farms)*, 85 F.3d 1415 (9th Cir.1996); *Sandy Ridge Development Corp. v. Louisiana National Bank (In re Sandy Ridge Development Corp.)*, 881 F.2d 1346 (5th Cir.1989); *In re Atlanta Southern Business Park, Ltd.*, 173 B.R. 444 (Bankr.N.D.Ga.1994); Alan N. Resnick & Henry J. Sommer, 7 COLLIER ON BANKRUPTCY § 1129.04[2][c] (16th ed. 2010).

The Plan here goes beyond the concept of transferring *all* of a lender's collateral to it in satisfaction of its *secured* claim. Rather, the Plan provides for the Bank to receive only part of its collateral, the Highway 411/Dodd Blvd Property, and to lose the additional collateral it has. The theory underlying the Debtor's ability to do this is that the Bank's receipt of the Highway 411/Dodd Blvd Property provides it with enough value to satisfy its claim in full, resulting in release of other collateral that the Bank holds as additional collateral for its claim.

■ In order for treatment of a secured creditor's claim to qualify as being the "indubitable equivalent" of the claim, the treatment must be completely compensatory. *See, e.g., Arnold & Baker Farms v. United States (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1422 (9th Cir.1996); *In re Atlanta Southern Business Park, Ltd.*, 173 B.R. 444, 448 (Bankr.N.D.Ga. 1994). In this regard, an equivalent is "indubitable" if no reasonable doubt exists that the creditor will be paid in full. *See, e.g., Arnold & Baker Farms*, 85 F.3d at 1421 (quoting *In re Walat Farms, Inc.*, 70 B.R. 330, 334 (Bankr.E.D.Mich.1987)); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 915–16 (Bankr.W.D.Okla.1996). When the plan proposes the transfer of some, but not all, of the collateral to the creditor in full satisfaction of the debt, the court must take a conservative approach to valuation of the collateral in order to protect the secured creditor. *Atlanta Southern Business Park*, 173 B.R. at 450.

■ Applying these standards here, the Court concludes that the transfer of the Highway 411/Dodd Blvd Property to the Bank provides for the realization of the indubitable equivalent of its claim. Specifically, the credible and uncontroverted evidence before the Court establishes that $990,000 is a "fire sale" value. In this regard, the "fire sale" value reflects a discount of at least $200,000 from what the property could be sold for if it were marketed in the usual way that such properties are marketed. The "fire sale" value of $990,000, then, clearly reflects a conservative approach to valuation that is the bare minimum that the property will sell for in a reasonably prompt time.

After payment of estimated selling expenses of $50,000 and satisfaction of un-

paid ad valorem taxes of approximately $9,000, the remaining proceeds from such a "fire sale" would be $931,000, which is enough for the Bank to receive more than the amount now due (approximately $907,000), plus six months of interest (approximately $21,500 for 180 days at the per diem rate of $119) (a total of $928,500).

Based on the evidence before the Court, as reflected in its findings of fact, the Court concludes that no reasonable doubt exists that the transfer of the Highway 411/Dodd Blvd Property to the Bank will result in full payment of its claim. As such, the transfer provides for the realization by the Bank of the indubitable equivalent of its claim. The Plan therefore meets the "fair and equitable" requirement of § 1129(b)(2)(A)(iii).

■ The Bank also contends that the plan discriminates unfairly because its claim is the only one that is being satisfied by the transfer of collateral. Section 1129(b)(1) requires that a plan "not discriminate unfairly" as a condition for its confirmation over its rejection by an impaired class.

■ This condition has little, if any, significance in the context of a secured claim. Because each secured creditor has collateral, repayment terms, and other rights that are unique to it, proper classification in a Chapter 11 plan requires a separate class for each secured claim. The propriety of the treatment of a secured claim is not generally determined by reference to the treatment of other secured claims. Nothing requires that a plan provide treatment for every secured claim with the same maturity date, rate of interest, payment schedule, or any other term. So a secured creditor must show something other than the uniqueness of its treatment to

establish unfair discrimination. In any event, a provision that provides treatment for a secured creditor that provides the indubitable equivalent of its claim—in this case, payment in full—cannot be said to be "unfair."

■ At the same time, it is important to recognize that § 1129(b), the "cram-down" subsection, "provides only a minimum requirement for confirmation ... so a court may decide that a plan is not fair and equitable even if it is in technical compliance with the Code's requirements." *E.g.*, *Atlanta Southern Business Park,* 173 B.R. at 448. In this regard, it could be inequitable to conclude that a plan provision such as the one under consideration here is "fair and equitable," if the provision serves no reorganization purpose. *See Freymiller Trucking,* 190 B.R. at 916. But in this case, the evidence shows that elimination of the Bank's lien on other collateral is necessary for the reorganization of the Debtor and his ability to deal with all of the claims of other creditors who have accepted the Plan. No evidence demonstrates that the Plan is inequitable or unfair.

## Conclusions of Law

Based on the findings of fact announced by the Court at the hearings in this case and the undisputed facts that the parties have agreed on, the Court concludes that the Plan's provisions with regard to treatment of the Bank's claim provide for the Bank to realize the indubitable equivalent of its claim, that the Plan does not unfairly discriminate with regard to the Bank's claim, and that the Plan's provisions with regard to the Bank's claim are fair and equitable. Consequently, the Court concludes that the Plan meets the requirements of 11 U.S.C. § 1129(b) with regard

to the Bank's claim such that its acceptance of the Plan is not required.

The Court having determined at the hearings that the Plan meets all other requirements for confirmation, the Court will enter a separate Order for confirmation of the Plan.

**IT IS ORDERED.**